835 So.2d 94 (2002)
Robert MANNING, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-00627-COA.
Court of Appeals of Mississippi.
November 26, 2002.
*96 Phillip Broadhead, Jackson, attorney for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
Before KING, P.J., LEE and IRVING, JJ.
IRVING, J., for the court.
¶ 1. Robert Manning was convicted of murder and sentenced to life imprisonment by the Hinds County Circuit Court. In his appeal to this Court, he asserts the following assignments of error: (1) the State examined the venire to pledge a specific verdict, (2) the State was allowed to re-open voir dire to ask a question which commented upon Manning's right to remain silent, (3) one of the State's witnesses was allowed to give an improper lay opinion, (4) the trial court erred in refusing to grant an instruction on self-defense, (5) the prosecutor made an improper closing argument, and (6) the verdict was against the overwhelming weight of the evidence and insufficient as a matter of law.
¶ 2. Finding no reversible error, this Court affirms.

FACTS
¶ 3. Robert Manning and Louise Hilliard had lived together, off and on, for a number of years. On the day that Hilliard was killed, and prior to the discovery of her body, Manning voluntarily surrendered to authorities at the Jackson Police Department. He gave a taped confession in which he admitted shooting Hilliard but gave conflicting accounts of how the shooting occurred. At one point in the confession, Manning claimed to have acted in self-defense, while at another he claimed that Hilliard was shot accidentally as the two of them struggled for possession of the gun. The medical testimony contradicted both of these claims.
¶ 4. The medical testimony was that Hilliard was shot twice. One bullet entered the rear of her right forearm, exited the front of her forearm, and lodged in her hip. The other bullet entered her back and lodged in her sternum. The gunshot to the back produced the fatal wound. Manning did not testify at trial.

ANALYSIS AND DISCUSSION OF THE ISSUES

1. Specific Verdict Pledge from the Venire
¶ 5. Manning argues that the following questioning of the jury panel by the State was an improper jury examination, the aim of which was to extract a pledge from the venire to vote guilty even if the State failed to produce sufficient evidence to undergird a conviction:
PROSECUTOR WEINBERG: Is there anybody who would require the State before you could vote guilty in a murder case to produce eyewitnesses to what happened before you could vote guilty? The law doesn't require me to do that, but would any of you require me to do that?

*97 DEFENSE COUNSEL FORTNER: Objection, Your Honor. It's not appropriate for the prosecutor to tell the jury what the law requires or does not require him to do. That's a question for the Judge to instruct the jury on.
WEINBERG: May I rephrase Your Honor, to get their response to whether or not they would require more thanwould require eyewitnesses, independent eyewitnesses, which is all I'm trying to do here?
THE COURT: All right. I'll let you ask that one.
WEINBERG: Let me just make sure I get your responses if there are any. Is there anyone hereand I ask you to raise your hand, if you wouldwho would require me to produce independent eyewitnesses to what happened before you could vote guilty on a murder charge? If so, raise your hand, please.
* * * * * *
WEINBERG: Is there anybody here who feels like you would have to have some particular type of scientific proof that absolutely nails this case shut before you could vote guilty?
FORTNER: We're going to object to that question, Your Honor. The Court is to instruct the jury on what proof is required and what elements are required. The jury can't be placed in a position of making some promise about how they would render or reach a verdict or what evidence they would or would not require. That's an improper question.
WEINBERG: Your Honor, it's not improper to ask them about their attitude toward whether or not they would require scientific proof. Under De La Beckwith, that case that I've cited to Your Honor before, I'm entitled to ask that question.
THE COURT: All right. Overruled.
¶ 6. Manning argues that "the major problem presented by the [S]tate's voir dire examination is that the persistent extraction of a pledge to find guilt without certain facts in evidence would tend to encourage jurors not to follow the instructions of the court." A verdict, he claims, "could possibly be reached without the jury having followed the law of the case as instructed by the trial judge." Manning further contends that the error committed by the trial court in allowing the State's voir dire examination "is of constitutional dimension as it impacts on his fundamental right to a fair trial by a fair and impartial jury." He argues that "prejudice must be presumed by a reviewing court and a harmless error beyond a reasonable doubt review should be accomplished." This Court disagrees.
¶ 7. The standard of review for questions asked on voir dire is abuse of discretion. Hypothetical questions couched in the facts of the particular case asking the venire to pledge a specific verdict are impermissible. Harris v. State, 532 So.2d 602, 606, 607 (Miss.1988). The Mississippi Supreme Court has further instructed that:
Trial courts have a responsibility to control voir dire but in doing so they must take care not to hinder a full exploration of a juror's predispositions, by hypothetical or otherwise. However, [t]he line between a proper and improper question is not always easily drawn; it is manifestly a process in which the trial judge must be given a considerable [amount of] discretion.
Evans v. State, 725 So.2d 613 (¶ 128) (Miss.1997) (citations omitted).
¶ 8. This Court held in Forbes v. State, 771 So.2d 942 (Miss.Ct.App.2000), that it *98 was proper for the State to query prospective jurors about whether a defendant's age would influence their verdict. We found that the prosecutor in that case only sought to highlight for the jurors the proper and improper considerations for determining guilt and innocence when it informed the jury that it would be improper to refuse to find guilt, despite being convinced beyond a reasonable doubt, because of sympathy for a teenaged defendant. Id. at (¶ 18). Similarly, our supreme court found no error occurred when the following question was permitted on voir dire:
With respect to the rape case, would the evidence for you to find somebody guilty of committing rape, would you require the State of Mississippi to prove or require that a victim come in here and say that she resisted until she was beaten to a bloody pulp and seriously injured before you could find someone guilty? We are talking about forcible rape here. I believe force is an element that we are going to have to prove. But would you require a victim resist until she is unconscious, fight and struggle dealing against overwhelming odds?
Simmons v. State, 805 So.2d 452, 504 (¶¶ 146-147) (Miss.2002).
¶ 9. We find that in the case at bar the State was not seeking to secure a pledge from the jurors that they would return a certain verdict given a certain set of facts. We find, instead, that the State was trying to ascertain: (1) whether the jurors could put aside the fact that there were no eyewitnesses to the shooting, and (2) whether they had any preconceived notions that a certain type of scientific evidence should be presented. There was no abuse of discretion. This issue has no merit.

2. Comment on Right to Remain Silent
¶ 10. The jury panel was asked the following question during Manning's voir dire: "Mr. Manning is not required to testify; but if he does, is it anyone in here who would discredit his testimony before he even testifies and say that he's on trial for his life, so he's likely to say anything?" At the completion of Manning's voir dire, the State asked that it be allowed to reopen voir dire to ask one additional question. The circuit court granted the State's request, over objection by Manning, and the State posed the following:
During defense voir dire, Ms. Jackson asked you a question in which she prefaced it in terms of if the defendant were to testify. My question to you is if the defendant were to testify, would each of you agree towhatever criteria you personally would applyto weigh his testimony the same way you would weigh the testimony of any other witness? Is there anyone who would not do that? If so, raise your hand please.
¶ 11. The decision of whether to reopen voir dire is left to the discretion of the trial judge. Harrigill v. State, 381 So.2d 619, 623 (Miss.1980). Manning contends that the trial court abused its discretion in reopening voir dire because it "allowed the State to make what was tantamount to an impermissible comment on the defendant's right to remain silent under the Fifth Amendment to the United States Constitution and under Article 3, Section 26 of the Mississippi Constitution." We do not find that to be the case.
¶ 12. The question posed on reopening was simply an inquiry into whether the jury would give Manning's testimony the same weight as any other witness's testimony, should he decide to testify. We see nothing ominous in that. Finding no impropriety in the question and no abuse of discretion on the part of the trial court in allowing the State to reopen voir dire, we hold that this issue is without merit.

*99 3. Lay Opinion

¶ 13. Richard Nations, the police detective who conducted the taped interview of Manning's confession, testified as follows on cross-examination by defense counsel:
Q. Okay. But he answered all your questions.
A. Yes, sir.
Q. And I went through the statement while the tape was playing, just like everybody else in here did, and [he] pretty much tells the same story from start to finish, answers the questions pretty much the same way doesn't he?
On redirect, the following occurred:
Q. Mr. Fortner asked you on cross-examination if the defendant told you pretty much the same story all the way through. Do you recall that question?
A. Yes, sir.
* * * * * *
Q. All right, sir. And is that the same story he kept all the way through or did he later
FORTNER: We're going to object, Your Honor. That invades the province of the jury. That's what the jury has the statement for, so they can make those decisions.
WEINBERG: It's a response to counsel's question that he told the same story all the way through, Your Honor.
COURT: Overruled.
FORTNER: We object again. It invades the province of the jury. He's asking the witness to determine what the facts are, not the jury. That's what juries are for, Your Honor.
THE COURT: Overruled.
WEINBERG: (Continuing)
Q. Did he stick with that story all the way through?
FORTNER: Objection, Your Honor, to the form of the question.
THE COURT: Sustained as to the form of the question.
WEINBERG: (Continuing)
Q. Just tell us whether or not every time he told the story it was the same or different than what
FORTNER: We object to the form of the question, Your Honor.
THE COURT: Overruled. Brought out on cross.
* * * * * *
WEINBERG: (Continuing)
Q. Did he tell you the same story all the way through?
A. Not the exact same.
¶ 14. Manning argues in his appellate brief that by allowing the final question and answer of the above-quoted passage the trial court, in effect, permitted Nations to express a lay opinion which was not, but should have been, in conformity with the provisions of Rule 701 of the Mississippi Rules of Evidence. This argument is made for the first time in this appeal. The Mississippi Supreme Court has repeatedly held that a trial judge cannot be put in error on a matter which was not presented to him for decision. Bender v. North Meridian Mobile Home Park, 636 So.2d 385, 389 (Miss.1994). Thus, this issue is procedurally barred. Procedural bar, notwithstanding, we address the issue on its merit.
¶ 15. This Court wrote in Greer v. State, 755 So.2d 511, 516(¶ 14) (Miss.Ct. App.1999), that trial courts have broad discretion in allowing or disallowing redirect examination of witnesses and when the defense attorney inquires into a subject on cross-examination of the State's witness, *100 the prosecutor on redirect is unquestionably entitled to elaborate on the matter. Manning's counsel asked on cross-examination whether Manning told the same story throughout his taped statement. Since Manning's counsel opened the inquiry, it was not improper redirect for the prosecution to inquire on the same topic, even if the answers to the questions asked on redirect included an opinion of the person questioned. Accordingly, we find that this issue is without merit.

4. Self-Defense Instruction
¶ 16. Manning contends that his requested self-defense instruction was mandatory in view of the fact that the trial court charged the jury in two of its "elements-of the-crimes-charged" instructions that in order to find guilt it had to find that in the commission of the homicide Manning did not act in necessary self-defense. Manning claims that in order for the jury to make a finding as to whether he did or did not act in necessary self-defense, it was necessary that the jury be instructed on the legal definition of self-defense. Manning claims that the purpose of his proposed instruction was to provide that definition. The proposed instruction reads as follows:
The Court instructs the jury that to make a killing justifiable on the grounds of self-defense in this case, the danger to Robert Manning must be either actual, present and urgent, or he must have a reasonable ground to apprehend a design on part of Louise Hilliard to do him some great bodily harm. In addition to this Robert Manning must have reasonable ground to believe that there is an imminent danger of Louise Hilliard accomplishing that design. It is for the jury to determine whether Robert Manning acted reasonably in the circumstances presented by the evidence.
If you find that Robert Manning acted in self-defense, then it is your sworn duty to find him Not Guilty.
¶ 17. In refusing the instruction, the circuit court agreed with the State's position that the "common sense meaning" of self-defense was sufficient notice to the jury of what was meant by "self-defense" in the elements instructions and that since there was no claim of self-defense anywhere in the trial record it was not necessary to give the jury an extensive legal definition of self-defense. This Court agrees with that ruling.
¶ 18. The only hint of a self-defense claim throughout Manning's trial proceeding was contained in Manning's statement to the police that he wrestled the gun away from Hilliard. Even if that version of what transpired is accepted as true, once he gained control of the gun there was no indication, not even from Manning himself, that Hilliard posed any further threat to Manning's safety or well-being. In fact, the uncontested medical testimony was that Hilliard was shot while she was moving away from Manning. This Court finds that there was no basis in fact for a self-defense instruction and no need for a legal definition of "self-defense" as contained in the elements instructions. "Jury instructions are to be granted only where evidence has been presented which supports the instruction." Jackson v. State, 815 So.2d 1196, 1200(¶ 7) (Miss.2002) (quoting Jones v. State, 797 So.2d 922, 927 (Miss.2001)). This aspect of this issue is without merit.
¶ 19. Manning further contends in his appellate brief that self-defense was his sole theory of defense and refusal of the instruction denied him a fundamentally fair trial in violation of the Constitution of the United States and of the Constitution of the State of Mississippi. This argument was never raised before the trial court; *101 therefore, it is procedurally barred on appeal. Procedural bar aside, this claim has no merit. There is no constitutional right to have the jury instructed on a theory of defense that is not supported by the evidence.

5. Improper Closing Argument
¶ 20. Manning contends that the State made improper closing argument in several instances. First, Manning argues that the State traveled outside the confines of the record and urged the jury to disregard the court's instruction that manslaughter could be considered as an alternative verdict. The complained of comments were as follows:
WEINBERG: Ladies and gentlemen, of course, the defendant is asking you to find him guilty of manslaughter. As Ms. Jackson told you yesterday or perhaps the day before during voir dire, murder carries life in prison as a sentence. Manslaughter carries somewhere between two and twenty years as a sentence so
FORTNER: We're going to object, Your Honor, and ask to approach the bench.
(THE FOLLOWING BENCH CONFERENCE OCCURRED BETWEEN THE COURT, COUNSEL AND THE COURT REPORTER OUTSIDE THE HEARING OF THE JURY)
FORTNER: I'm sorry, Your Honor. We object and move for a mistrial. It is completely inappropriate and improper for them to mention sentencing to this jury. This jury has nothing to do with sentencing. It's no consideration for them whatsoever. Our Supreme Court on numerous occasion [sic] has condemned any party, defense or prosecution, from mentioning anything in this area, and we object and move for a mistrial.
WEINBERG: Our response is they've already done it, Your Honor. The jury is entitled to know the difference once they bring up the life imprisonment for murder.
FORTNER: We'll stand on the record on it.
WEINBERG: The record is clear on it.
FORTNER: Good.
COURT: It was brought up during voir dire. This is the first time since this Judge has been a judge that the penalty has been brought up like that. It was brought up during voir dire by the defendant. In view of that, the Court is going to overrule the objection and deny the motion for mistrial.
During voir dire, counsel for Manning made the following comment without objection: "Mr. Manning is facing a life sentence if he gets convicted of murder, it's very important that he gets jurors who are fair to him."
¶ 21. It is well established in Mississippi that attorneys are given wide latitude in arguing their cases to the jury; however, tactics which are inflammatory, highly prejudicial and reasonably calculated to unduly influence the jury are not permissible. Hiter v. State, 660 So.2d 961, 966 (Miss.1995). Also, it is well settled in Mississippi jurisprudence that closing argument which discusses the possible penalty a defendant can receive is improper. See, e.g., Marks v. State, 532 So.2d 976, 983 (Miss.1988).
¶ 22. This Court, however, because of two reasons, finds no reversible error with the remarks made by the State. First, as the trial court found, the matter of the penalty, which Manning could receive, was first brought up by the defense during voir dire. Second, the proof of Manning's guilt of murder is overwhelming. Accordingly, *102 we find this assignment of error to be without merit.
¶ 23. Manning's second contention regarding improper closing argument centers on comments made by the prosecutor regarding "deliberate design" murder. Specifically, Manning contends that the following remarks by the State are an incorrect statement of the law on deliberate design:
PROSECUTOR: So, yes, he could have gone there intending, but I'm telling you it doesn't matter whether he went there intending to or not because the defense definition of deliberate design to effect death is not what the Court tells you in this instruction. It's not what the Court tells you in this instruction. I'm as entitled to interpret that, and you are, as Ms. Jackson is, and deliberate design to effect death, I submit to you, means at the time he pulled that trigger, either time, either time, that at the time he pulled that trigger that he had formed the intent to kill her.
MS. JACKSON: Objection, Your Honor. That's an improper statement of the law. That's an improper statement of deliberate design.
PROSECUTOR: That he had formed the intent to kill her is a correct statement of the law, Your Honor.
THE COURT: Well, the objection is overruled because this is argument, just like the other ruling the Court made. It's argument by the attorneys.
¶ 24. It is Manning's contention that the comments fall outside the bounds of acceptable closing argument, and "the trial court's allowance ... warrants reversal of Manning's conviction and a remand for a new trial on the merits." This Court disagrees.
¶ 25. The record indicates that the following occurred during defense closing argument:
MS. JACKSON: Then you go down to number four. Here's where you've got the problem. This says with deliberate design to effect death. In order for it to be a deliberate design it's got to be planned and advanced with full awareness of everything involved. He would have had to premeditate
WEINBERG:object to this as a misstatement of the law, Your Honor. Plan in advance is not a correct statement of the law.
* * * * * *
MS. JACKSON: May I, Your Honor?
THE COURT: All right.
MS. JACKSON: It's deliberateand I have the American Heritage Dictionary, Your Honor. This is argument, and that is what deliberatethe instruction says with deliberate design, and this is deliberate design. I'm explaining to them what it is, and that is allowed in argument. I do have the American Heritage Dictionary if you want to look at it.
THE COURT: The Court will overrule it. It's argument.
¶ 26. It is clear from the foregoing record excerpt that the prosecutor was merely countering the defense's argument on what was meant by "deliberate design." This type of responsive reasoning does not overstep the bounds placed upon closing arguments. See Holmes v. State, 754 So.2d 529, 538(¶ 22) (Miss.Ct.App.1999).
¶ 27. Manning further contends that the State crossed the line with the following remarks which were permitted to be made over his objection:

*103 As I was saying, I've been doing this a long time. I've been doing this twenty years. I've been prosecuting full-time for twenty years, and I have seen a lot of death cases, and they're always tragic, and this one falls in that category. It's just tragic when somebody is killed needlessly as Louise Hilliard was for not doing anything except having an argument.
Manning contends that the prosecutor, by making these comments, was able to improperly inject his own personal beliefs and experiences from prior cases into Manning's trial.
¶ 28. The record indicates that the jury was properly instructed on the law and was instructed that what was said in opening and closing argument was not evidence. The comments were innocuous. Finding that there was no abuse of discretion on the part of the circuit court in allowing them, we hold that this issue has no merit.
¶ 29. Finally, Manning contends that the totality of the separate instances of prosecutorial misconduct constitutes a course of conduct so egregious that a reversal and remand for a new trial on the merits is required. Needless to say, since this Court has found that there was no reversible error in any part, there is no reversible error to the whole. McFee v. State, 511 So.2d 130, 136 (Miss.1987).

6. Sufficiency of the Evidence
¶ 30. Manning contends that the evidence presented at his trial was only sufficient as a matter of law to support a conviction for manslaughter, not murder, and the case should be reversed and remanded to the trial court for re-sentencing on manslaughter or in the alternative, reversed and remanded for a new trial on the merits.
¶ 31. Our supreme court has held on many occasions that, "[w]hen reviewing a challenge to the sufficiency of the evidence, [the appellate court] considers all of the evidence in the light most consistent with the verdict, giving the State the benefit of all inferences favorable to the verdict. When the evidence before the jury is such that reasonable jurors could have found the defendant guilty, the verdict is beyond our authority to disturb." Taylor v. State, 672 So.2d 1246, 1255 (Miss.1996).
¶ 32. On the basis of the medical testimony alone, that Hilliard was shot at a time when she had her back to Manning, we are compelled to find that any reasonable juror could have found Manning guilty; therefore, the verdict is beyond our authority to disturb.
¶ 33. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH SENTENCE TO RUN CONSECUTIVELY TO ANY OTHER SENTENCES IMPOSED BY ANY OTHER COURT, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.