MAXWELL, J.,
for the Court:
¶ 1. In the appeal of his conviction of seven counts of aggravated assault, Kewon Evans raises a single challenge. He asserts that, during voir dire, the trial judge improperly secured from potential jury members a commitment to find Evans guilty.
¶ 2. While it is impermissible to ask the jury to pledge a verdict based on a hypothetical question couched in the particular facts of the case, here we find the trial judge did not ask for such a pledge. Instead, he asked questions to ascertain any preconceived notions about what type of evidence the State would have to produce in order to find Evans guilty. Because asking these questions was well within the trial judge’s discretion, we find no reversible error. We affirm Evans’s conviction.
Background
¶ 3. On the night of September 14, 2010, Evans got into a fight outside of Club Platinum in Gunnison, Mississippi. According to two eyewitnesses, Evans began shooting toward the club. The bullets penetrated the club’s walls, hitting seven patrons. An eighth person was injured during the ensuing chaos.
¶ 4. The State charged Evans with eight counts of aggravated assault. After the State rested, the trial judge granted Evans a directed verdict on count eight — the assault count involving the injured victim who had not been shot. The seven remaining counts were submitted to the jury, who found Evans guilty on each count. The trial judge sentenced him to five years’ imprisonment on each count, to be served consecutively, for a total of thirty-five years. Evans timely appealed.
Discussion
¶ 5. In his appeal, Evans makes a single assertion of error. Evans claims he is entitled to a new trial based on questions the trial judge asked during voir dire— questions his trial counsel had not found objectionable. Because the trial judge acted well within his discretion when asking these questions, we find no abuse of discretion, let alone the plain error needed. So we affirm.
I. No Objection During Yoir Dire
¶ 6. During voir dire, the prosecution asked the venire, “If the State does not produce a gun as evidence that was used by an alleged shooter, will you hold that against the State?” Evans made no objec *371 tion. And four people raised their hands. When the State finished its questions, the trial judge followed up with these four potential jurors. He asked a series of questions culminating in this request: “[Ijrrespective of the explanation, if you’re going to require that [the State] bring a gun into this courtroom before you can vote guilty, raise your hand.”[1]
¶ 7. Again, Evan’s trial counsel made no objection to this line of questioning as being improper. In fact, when discussing whether one of the jurors who raised his hand should be stricken for cause, Evans’s trial attorney joked that he “wish[ed] [the juror] would have been quiet.”
¶8. But Evans’s appellate counsel takes a quite different view, asserting that the trial judge, by asking those questions about the gun, improperly sought a commitment from jurors to vote a certain way. Because no objection was made during trial, this issue is procedurally barred. See Simmons v. State, 805 So.2d 452, 505 (¶ 148) (Miss.2001) (citing Edwards v. State, 737 So.2d 275, 308 (¶ 103) (Miss. 1999)) (holding “failure to object during voir dire barred the issue from being raised on appeal”). So for us to reverse, Evans must show the trial judge’s questions amounted to plain error. See Avery v. State, 119 So.3d 329, 333 (¶ 11) (Miss.Ct. App.2012) (reviewing claim that prosecution improperly secured pledge from jury for plain error); see also Minor v. State, 89 So.3d 710, 715 (¶ 17) (Miss.Ct.App.2012) (discussing plain-error doctrine and its requirements).
II. No Request that the Jury Pledge a Specific Verdict
¶ 9. We find Evans has shown no error at all, let alone an “obvious” error prejudicially affecting the outcome of the trial. See Minor, 89 So.3d at 715 (¶ 17).
¶ 10. A trial judge has “broad discretion in passing on the extent and propriety of questions that are addressed to the venire.” Comer v. State, 744 So.2d 793, 796 (¶ 9) (Miss.Ct.App.1999) (quoting Davis v. State, 684 So.2d 643, 651 (Miss. 1996)). However, this broad discretion is not -without limit. In particular, “[h]ypo-thetical questions couched in the facts of the particular case asking the venire to pledge a specific verdict are impermissible.” Manning v. State, 835 So.2d 94, 97 (¶ 7) (Miss.Ct.App.2002) (citing Harris v. State, 532 So.2d 602, 606, 607 (Miss.1988)); see also URCCC 3.05. But in fulfilling his or her “responsibility to control voir dire,” a trial judge “must take care not to hinder a full exploration of a juror’s predispositions, by hypothetical [question] or otherwise.” Id. (quoting Evans v. State, 725 So.2d 613 (¶ 128) (Miss.1997)). Because “the line between a proper and improper question is not always easily drawn[,] ... the trial judge must be given a considerable amount of discretion.” Id.
*372 ¶ 11. So “for there to be per se error, the questions must be a direct request for a promise for a specific verdict.” Simmons, 805 So.2d at 505 (¶ 149); see also Comer, 744 So.2d at 796 (¶ 9) (citation omitted) (“[Wjhere no specific request is made to secure a promise of a guilty verdict[,] reversible error does not occur.”). But here, Evans concedes the trial judge did not cross this clear line by asking venire members to pledge a specific verdict if the State proved a particular set of facts. Thus, we find no plain, clear, or obvious error was committed. See Minor, 89 So.3d at 715 (¶ 17) (holding that reversal under plain-error doctrine requires the trial court to have made an error that is “plain, clear[,] or obvious”).
¶ 12. In fact, no error was committed at all because the trial judge was well within his broad discretion when asking the veni-re about any preconceived notions regarding what evidence was required to convict Evans. Despite acknowledging the fact the judge did not request a commitment of a specific verdict, Evans nevertheless insists the judge’s questions were out-of-bounds because they suggested the jury could find Evans guilty without the State having shown it had retrieved the gun from Evans.[2] But it is clear from the transcript that the purpose of the trial judge’s questions was to fully explore some of the venire members’ expressed predispositions that they would not convict unless the State produced the gun used to shoot the seven victims. And both the Mississippi Supreme Court and this court have found that questions along these lines are well within the trial judge’s discretion. See, e.g., Goff v. State, 14 So.3d 625, 652-54 (¶¶ 110-12) (Miss.2009); Simmons, 805 So.2d at 504-05 (¶¶ 146-49); Manning, 835 So.2d at 96-98 (¶¶5-9); Corner, 744 So.2d at 794-96 (¶¶ 5-9).
¶ 13. For example, in Manning, this court found no abuse of discretion when the trial judge permitted the State to ask the venire if anyone would require eyewitness testimony or scientific evidence to find the defendant guilty of murder. Manning, 835 So.2d at 96-97 (¶ 5). Instead of improperly “securing] a pledge from the jurors that they would return a certain verdict given a certain set of facts,” the State through its questions “was trying to ascertain: (1) whether the jurors could put aside the fact that there were no eyewitnesses to the shooting, and (2) whether they had any preconceived notions that a *373 certain type of scientific evidence should be presented.” Id. at 98 (¶ 9).
¶ 14. Similarly, in Comer, this court found that “merely ask[ing] whether the venire would still be able to consider a guilty verdict even though there was no weapon, fingerprint, DNA, or confession evidence ... was within the permissible range of acceptable questioning.” Corner, 744 So.2d at 796 (¶ 9); see also Goff v. State, 14 So.3d 625, 652-54 (¶¶ 110-12) (Miss.2009) (finding no impropriety in the State asking the jury if they could set aside preconceived notions regarding forensic evidence and convict the defendant of murder even if no DNA evidence was produced).
¶ 15. The only difference between this case and Manning and Comer is that, here, the trial judge, not just the prosecutor, asked if the jury would be able to convict even if no gun was admitted into evidence. Because the judge did not request a specific verdict but instead merely asked whether potential jurors had preconceived notions about what evidence needed to be produced, we find the judge acted within his broad discretion during voir dire.
¶ 16. THE JUDGMENT OF THE BOLIVAR COUNTY CIRCUIT COURT OF CONVICTION OF SEVEN COUNTS OF AGGRAVATED ASSAULT AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS FOR EACH COUNT, TO BE SERVED CONSECUTIVELY, FOR A TOTAL OF THIRTY-FIVE YEARS, AND TO MAKE FULL RESTITUTION TO EACH VICTIM, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO BOLIVAR COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON AND FAIR, JJ., CONCUR. JAMES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. The judge's full line of questions was as follows:
... I don’t know what the facts are. But do you understand that sometimes, ... if someone uses a gun to commit a crime, I mean they can dispose of the gun. They may throw it in a garbage can, they may throw it in the Mississippi River, they may throw it wherever, and it never gets found. Now in that situation, the State is not going to have a gun because they could not find it. Under those circumstances — like I say, I don't know what the circumstances are here — but are you telling me that even though they couldn’t find a gun you would require that they bring a gun into the courtroom before you could find him guilty? Is that what you’re telling me? ... [Irrespective of the explanation, if you’re going to require that they bring a gun into this courtroom before you can vote guilty, raise your hand. Now don’t be embarrassed just because I’m talking about it now. If you’re going to require it, let me know.

. As support, Evans cites Mickell v. State, 735 So.2d 1031 (Miss. 1999), an opinion that does not confront hypothetical questions asked during voir dire. Instead, Mickell dealt with the jury asking the judge, during their deliberations, whether they could convict the defendant of armed robbery even though the State never recovered the gun. Id. at 1033 (¶ 5).
Because the jury had also been instructed on the lesser-included offense of robbery, the Mississippi Supreme Court found that "[t]he fact that the jury asked the question at all indicates that there may well have been jurors who had concluded that the State’s failure to recover a weapon was sufficient to raise a reasonable doubt that the crime of armed robbery had been committed.” Id. at 1034 (¶ 13). Thus, the "pronouncement by the trial court,” over the defendant's objection, "that such evidence was not essential to a conviction for armed robbery could easily have undermined a legitimate analysis of the strength of the State’s proof.” Id.
Here, we do not have empaneled jurors in the midst of deliberation being instructed by a judge on how to view the already presented evidence in response to a note about the fact the State had presented no arms in an armed-robbery case. Instead, we have potential jurors being questioned about their preconceived notion that a certain piece of evidence — the gun used to shoot the seven victims — is essential to convict, when admission of this physical evidence is not a necessary element of the charged crimes. So Mic-kell does not support a finding of plain error here.