IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2024 Term

**FILED**

**November 7, 2024**

**released at 3:00 p.m.**
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 22-836

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent,

v.

MICHAEL J.,
Defendant Below, Petitioner.

Appeal from the Circuit Court of Fayette County
The Honorable Paul M. Blake, Jr., Judge
Case No. 22-F-21

REVERSED AND REMANDED

Submitted:  October 23, 2024
Filed:  November 7, 2024

Gary A. Collias, Esq.
Appellate Advocacy Division
Public Defender Services
Charleston, West Virginia
Counsel for Petitioner

Patrick Morrisey, Esq.
Attorney General
Mary Beth Niday, Esq.
Assistant Attorney General
Andrea Nease Proper, Esq.
Deputy Attorney General
Charleston, West Virginia
Counsel for Respondent

JUSTICE WALKER delivered the Opinion of the Court.

1.      "'In a criminal case, the inquiry made of a jury on its *voir dire* is within the sound discretion of the trial court and not subject to review, except when the discretion is clearly abused.'  Syl. pt. 2, *State v. Beacraft*, 126 W. Va. 895, 30 S.E.2d 541 (1944)[, *overruled on other grounds*, *State v. Dolin*, 176 W. Va. 688, 347 S.E.2d 208 (1986), *overruled on other grounds*, *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990)]."  Syllabus Point 2, *State v. Mayle*, 178 W. Va. 26, 357 S.E.2d 219 (1987).

2.      "'The right to a trial by an impartial, objective jury in a criminal case is a fundamental right guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article III, Section 14, of the West Virginia Constitution.  A meaningful and effective *voir dire* of the jury panel is necessary to effectuate that fundamental right.'  Syl. Pt. 4, *State v. Peacher*, 167 W. Va. 540, 280 S.E.2d 559 (1981)."  Syllabus Point 2, *State v. Dellinger*, 225 W. Va. 736, 696 S.E.2d 38 (2010).

3.      "The official purposes of *voir dire* [are] to elicit information which will establish a basis for challenges for cause and to acquire information that will afford the parties an intelligent exercise of peremptory challenges.  The means and methods that the trial judge uses to accomplish these purposes are within his discretion."  Syllabus Point 2, *Michael on Behalf of Est. of Michael v. Sabado*, 192 W. Va. 585, 453 S.E.2d 419 (1994).

4. During voir dire in a criminal trial, counsel may not elicit a commitment from prospective jurors to either convict or acquit the defendant based on the anticipated evidence.

WALKER, Justice:

Petitioner Michael J. was convicted of multiple sexual offenses involving his minor stepdaughter. On appeal, Petitioner contends that he was denied his right to be tried by an impartial jury because during voir dire the trial court allowed the State to ask potential jurors to agree, by a show of hands, to convict him if they found the victim's testimony merely "believable," without consideration of whether his testimony might also be believable and without regard to whether the State proved guilt beyond a reasonable doubt—and they all made that pledge. We conclude that this inquiry was an improper commitment question, in violation of the constitutional right to a trial by an impartial, objective jury. Because Petitioner has shown a real probability that it sowed prejudice in the venire, and in the jury that convicted him, we reverse and remand for a new trial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In September 2020, Child Protective Service workers removed twelve-year-old Z.S., her younger brother, and older sister, from the home where they lived with their mother and stepfather, Petitioner Michael J., based on substantiated allegations of domestic violence. The children moved into the home of their aunt. In October 2020, Z.S. began therapy sessions to treat emotional problems including depression and debilitating panic attacks. Following a panic attack in May 2021, Z.S. told her aunt that Petitioner sexually abused her. Z.S. eventually disclosed the details of the sexual abuse to her therapist and to a forensic interviewer at the Child Advocacy Center.

1

In January 2022, a grand jury indicted Petitioner on two counts of second-degree sexual assault, two counts of incest, one count of first-degree sexual abuse, and three counts of sexual abuse by a parent, guardian, custodian, or other person of trust. The case proceeded to trial in July 2022. At the beginning of voir dire, the trial court instructed the jury panel to raise their hands if they had an affirmative response to any question. The trial court asked a series of general questions intended to reveal any biases of the potential jurors. The trial court then allowed the State and Petitioner to pose their own questions to the panel.

The prosecutor explained to the jury panel that the State could not offer any physical evidence of the crimes and that it was going to rely primarily on the testimony of the now 14-year-old victim. He said that it is acceptable to convict someone charged with sexual offenses based solely on the victim's testimony. The prosecutor asked whether anyone would have a problem finding Petitioner guilty because the State did not have any physical evidence, and no one answered in the affirmative. He then said, "I want all of you to agree with me that if we get to the end of this trial and after you've listen[ed] to all the evidence" and if you find the victim "believable and she testifies about the allegations in the indictment adequately that you will find the Defendant guilty. Will all of you agree with me?" Petitioner objected and the trial court overruled the objection. The prosecutor repeated, "Will all of you agree with me that if you find the victim's testimony believable that you'll find the Defendant guilty? Raise your hands if you're in agreement with me."

2

All potential jurors raised their hands. After the prosecutor finished, Petitioner's counsel asked the jury panel three questions unrelated to the issue presented in this appeal.

After the jury was empaneled, the trial court gave initial instructions and counsel presented their opening statements. The State called the detective who investigated the allegations against Petitioner, Z.S.'s aunt,[1] Z.S.'s therapist, Z.S., and Z.S.'s sister. When Z.S. testified, she described three instances where Petitioner had sexual contact with her when they were home alone together in the summer of 2020.[2] Z.S. stated that she did not report these incidents at the time because she was afraid of Petitioner and did not trust her mother.

Petitioner testified in his own defense and denied having any sexual contact with Z.S. He claimed that he was never home alone with Z.S. Petitioner stated that he and his wife were never apart during the summer of 2020, except for a couple of nights when she was at work. Petitioner's wife (Z.S.'s mother) testified for the defense, stating that she and Petitioner were "by each other's side constantly, maybe too much." But Z.S.'s sister disputed these claims, testifying that she and her siblings were often left home alone with

---

[1] Z.S.'s biological aunt was her adoptive mother at the time of trial.

[2] Z.S. said that the first time Petitioner sexually assaulted her, he came up from behind her, moved her shorts aside, and put his penis into her vagina. She said another incident occurred when Petitioner came into her bedroom and touched her vagina. She said another incident occurred when Petitioner came into the bathroom when she was showering, and he touched her vagina and buttocks.

Petitioner. Petitioner also called a psychologist who had concerns about the suggestive nature of the therapy sessions and questions posed to Z.S.

When the trial court instructed the jury, it emphasized that Petitioner was presumed innocent and, to overcome the presumption of innocence, the State had to prove his guilt beyond a reasonable doubt. The court instructed the jury members that they could convict Petitioner of a sexual offense based on the uncorroborated testimony of the victim, unless the testimony was inherently incredible, and that the victim's credibility was for them to determine. More generally, the trial court told the jury that they were the sole judges of the evidence in the case and the credibility of the witnesses with the duty to determine their truthfulness. After deliberations, the jury found Petitioner guilty of all charges.

Petitioner filed a motion for a new trial, arguing, among other things, that the trial court erred by allowing the State to ask prospective jurors if they would agree to convict him by a show of hands. Following a hearing, the trial court denied Petitioner's motion by order dated August 29, 2022.

The trial court held a sentencing hearing in September 2022. It sentenced Petitioner to consecutive prison sentences for all eight convictions, resulting in an effective sentence of 61 to 145 years of imprisonment. Petitioner appeals the October 6, 2022, sentencing order.

## II. STANDARD OF REVIEW

This Court has held that, "'[i]n a criminal case, the inquiry made of a jury on its *voir dire* is within the sound discretion of the trial court and not subject to review, except when the discretion is clearly abused.'"[3]  In order for Petitioner to establish reversible error, he must show that the trial court abused its discretion and that he was prejudiced.[4]  In this context, Petitioner must show that the State's improper commitment question sowed prejudice in the jury.[5]

## III.  ANALYSIS

In his sole assignment of error, Petitioner argues that the trial court abused its discretion during voir dire when it overruled his objection and allowed the prosecutor to ask all potential jurors to raise their hands if they would agree to convict if they found

---

[3] Syl. Pt. 2, *State v. Mayle*, 178 W. Va. 26, 357 S.E.2d 219 (1987) (quoting Syl. Pt. 2, *State v. Beacraft*, 126 W. Va. 895, 30 S.E.2d 541 (1944), *overruled on other grounds*, *State v. Dolin*, 176 W. Va. 688, 347 S.E.2d 208 (1986), *overruled on other grounds*, *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[4] *Michael on Behalf of Est. of Michael v. Sabado*, 192 W. Va. 585, 593, 453 S.E.2d 419, 427 (1994).

[5] *See, e.g.*, *Sanchez v. State*, 165 S.W.3d 707, 713 (Tex. Crim. App. 2005) (explaining that "reviewing courts should assess the potential harm of the State's improper commitment questioning by focusing upon whether a biased juror—one who had explicitly or implicitly promised to prejudge some aspect of the case because of the State's improper questioning—actually sat on the jury.  The ultimate harm question is: was the defendant tried by an impartial jury, or, conversely, was the jury or any specific juror 'poisoned' by the State's improper commitment questions on a legal issue or fact that was important to the determination of the verdict or sentence?").

the victim's testimony merely "believable." He contends that the State's use of the word "believable" meant that potential jurors agreed that they would convict him if Z.S.'s testimony was *capable* of being believed, rather than if the jury actually believed it. Petitioner also argues that the State improperly persuaded potential jurors to pledge to convict without regard for exculpatory evidence and without holding the State to its burden of proving guilt beyond a reasonable doubt on all elements. He maintains that this improper question sowed prejudice and caused all potential jurors to lose impartiality.

The State maintains that the prosecutor's question was proper because he was asking whether potential jurors were able to follow the law, specifically, that "[a] conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim[.]"[6] The State also argues that Petitioner cannot show prejudice because the trial court properly instructed the jury as to the standard by which it was to weigh the evidence; it emphasized that, to overcome the presumption of innocence, the State had to prove Petitioner's guilt beyond a reasonable doubt regarding the offenses of which he was accused. The State notes that the trial court instructed the jury that Petitioner was a competent witness on his own behalf and that they should not discount his testimony merely because he was the accused.

---

[6] *See* Syl. Pt. 1, in part, *State v. Haid*, 228 W. Va. 510, 721 S.E.2d 529 (2011).

Voir dire of prospective jurors in a criminal trial serves the critical purpose of affording a criminal defendant a trial before an impartial jury. "The right to a trial by an impartial, objective jury in a criminal case is a fundamental right guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article III, Section 14, of the West Virginia Constitution. A meaningful and effective *voir dire* of the jury panel is necessary to effectuate that fundamental right."[7] This Court has held that,

> the official purposes of *voir dire* [are] to elicit information which will establish a basis for challenges for cause and to acquire information that will afford the parties an intelligent exercise of peremptory challenges. The means and methods that the trial judge uses to accomplish these purposes are within his discretion.[8]

The scope of a permissible voir dire is necessarily broad to enable litigants to discover any bias or prejudice so that they may make either challenges for cause or preemptory challenges. Because bias or prejudice often cannot be ferreted out with general "follow-the-law questions," some inquiry into the relevant facts of the case is often essential.[9] Counsel may share important facts about the case to see if potential jury members have any preconceived notions about the law which could impede their ability to

---

[7] Syl. Pt. 2, *State v. Dellinger*, 225 W. Va. 736, 696 S.E.2d 38 (2010) (quoting Syl. Pt. 4, *State v. Peacher*, 167 W. Va. 540, 280 S.E.2d 559 (1981)).

[8] Syl. Pt. 2, *Michael on Behalf of Est. of Michael v. Sabado*, 192 W. Va. 585, 453 S.E.2d 419 (1994).

[9] *State v. Nicklasson*, 967 S.W.2d 596, 611 (Mo. en banc 1998).

follow instructions.[10]  For instance, in *Manning v. State*,[11] the Mississippi Court of Appeals found no abuse of discretion when the trial judge permitted the State to ask prospective jurors if anyone would require eyewitness testimony or scientific evidence before he or she could find the defendant guilty of murder.[12]  The court concluded that instead of improperly "secur[ing] a pledge from the jurors that they would return a certain verdict given a certain set of facts," the State through its questions "was trying to ascertain:  (1) whether the jurors could put aside the fact that there were no eyewitnesses to the shooting, and (2) whether they had any preconceived notions that a certain type of scientific evidence should be presented."[13]

Ascertaining whether potential jurors are capable of following the law or returning a specific verdict[14] differs greatly from asking them to pledge to convict under specific facts.[15]  Counsel should not phrase questions in a way to attempt to elicit a

---

[10] *State v. Fields*, 624 S.W.3d 414, 418-19 (Mo. Ct. App. 2021).

[11] 835 So.2d 94 (Miss. Ct. App. 2002).

[12] *Id*. at 96-97.

[13] *Id*. at 98.

[14] *See, e.g.*, Syl. Pt. 7, *State v. Williams*, 172 W. Va. 295, 305 S.E.2d 251 (1983) ("A defendant charged with murder of the first degree is entitled to question potential jurors on *voir dire* to determine whether any of them are unalterably opposed to making a recommendation of mercy in any circumstances in which a verdict of guilt is returned.").

[15] *Anderson v. State*, 1 So. 3d 905, 911 (Miss. Ct. App. 2008).

commitment from prospective jurors on how they would react to hypothetical facts or seek

to predispose them to react a certain way to anticipated evidence. "When the inquiry

includes questions phrased or framed in such a manner that they require the one answering

to speculate on his own reaction to such an extent that he tends to feel obligated to react in

that manner, prejudice can be created."[16] For instance, in *State v. Celian*,[17] the Missouri

Court of Appeals found that the trial court abused its discretion by allowing the State to

present the facts of the case during voir dire and then essentially ask "whether they would

convict—whether they would hold Celian accountable for his alleged conduct, whether

they agreed it was a 'big deal'—if those facts were shown at trial."[18] The court also

concluded that it was prejudicial error requiring reversal.[19]

While this Court has not previously considered the propriety of voir dire in

this context, our review of cases from other jurisdictions solidly confirms that counsel may

not seek to try their case on voir dire,[20] bolster the credibility of the victim or other

---

[16] *State v. Conaway*, 557 S.W.3d 372, 377-78 (Mo. Ct. App. 2018) (citations and internal quotation marks omitted).

[17] 613 S.W.3d 380 (Mo. Ct. App. 2020).

[18] *Id*. at 387.

[19] *Id*. at 388.

[20] *See, e.g.*, *Celian*, 613 S.W.3d at 385 ("In light of the purpose and timing of voir dire, neither the State nor defense counsel may try the case during that proceeding."); *Preston v. State*, 306 A.2d 712, 715 (Del. 1973) ("Too often we see the [v]oir dire process (continued . . .)

witness,[21] or ask improper commitment questions (also referred to as "stake out" questions)

that attempt to bind potential jurors to agree to convict the defendant if certain facts are

shown.[22] Because a criminal defendant has a constitutional right to a trial by an impartial

jury, "the purpose for prohibiting improper commitment questions by either the State or

the defendant is to ensure that the jury will listen to the evidence with an open mind—a

mind that is impartial and without bias or prejudice—and render a verdict based upon that

---

being misused to argue the case, to indoctrinate the jury, and to seek other undue advantage.").

[21] *See, e.g.*, *State v. Williams*, 427 P.3d 434, 443 (Utah App. 2018) (stating that once the prosecutor improperly attempted to bolster the victims' credibility during voir dire, "the trial court should have emphatically stopped this line of inquiry.").

[22] *See, e.g.*, *State v. Holmes*, 5 So.3d 42, 80 (La. 2008) ("Louisiana law clearly establishes that a party interviewing a prospective juror may not ask a question or pose a hypothetical scenario which would demand a commitment or pre-judgment from the juror or which would pry into the juror's opinions about issues to be resolved in the case."); *Hutcheson v. State*, 213 S.W.3d 25, 32 (Ark. 2005) ("The purposes of voir dire examination are to discover if there is any basis for challenges for cause and to gain knowledge for the intelligent exercise of peremptory challenges. Those purposes do not include an attempt to commit the jurors to a decision in advance.) (citation omitted); *Hailey v. State*, 413 S.W.3d 457, 492 (Tex. App. 2012) ( stating an attorney cannot attempt to bind or commit a prospective juror to a verdict based on a hypothetical set of facts); *Evans v. State*, 133 So.3d 369, 372 (Miss. Ct. App. 2013) ("So for there to be per se error, the [voir dire] questions must be a direct request for a promise for a specific verdict.") (quotation marks omitted); *West v. State*, 553 So.2d 8, 22 (Miss. 1989) ("Our law allows an attorney for either side to probe the prejudices of the prospective jurors to the end that all will understand the jurors' thoughts on matters directly related to the issues to be tried. What is impermissible is for an attorney to attempt to secure from the juror a pledge that, if a certain set of facts occur or are presented, the juror will vote a certain way."); *State v. Jolliff*, 867 S.W.2d 256, 260 (Mo. Ct. App. 1993) ("It is reversible error for an attorney during voir dire to attempt to obtain from the venire a commitment or pledge to act in a specific way if certain facts are elicited or certain contingencies arise at trial.").

evidence."[23] To that end, we hereby hold that during voir dire in a criminal trial, counsel may not elicit a commitment from prospective jurors to either convict or acquit the defendant based on the anticipated evidence.

Turning to the issue before us, the prosecutor explained to potential jurors that "the State's case is going to rely primarily on the testimony of this young lady," and that there would be no DNA, scientific, or physical evidence. He explained that "under West Virginia law it is acceptable for someone charged with sex offenses, involving a child, to be convicted based solely on the testimony of that child, provided you find the child's testimony to be credible or believable." The prosecutor then asked the venire if anyone would have "a moral problem, an ethical problem, a philosophical problem, is there going to be any problem on your part finding [Petitioner] guilty because the State does not have any physical evidence." This question was certainly permissible. He proceeded to say, "So, none of you are going to have a problem finding [Petitioner] guilty solely because there is no physical evidence?" This question was likewise permissible. There is nothing improper about the State divulging limited facts to determine whether prospective jurors will be able to follow the court's instructions about what the State needed to show to prove its case.

---

[23] *Sanchez*, 165 S.W. 3d at 712.

11

Following these bias-*seeking* questions, the prosecutor turned to asking bias-*injecting* questions. Specifically, he asked:

> So, I want all of you to agree with me that if we get to the end of this trial and after you've listen[ed] to all the evidence and you've listen[ed] to this young lady, [Z.S.], testify—I want all of you to agree that if you found her testimony believable and she testifies about the allegations in the indictment adequately that you will find the Defendant guilty. Will all of you agree with me?

Petitioner's counsel objected, and the trial court overruled the objection. The prosecutor then asked, "Will all of you agree with me that if you find the victim's testimony believable that you'll find [Petitioner] guilty? Raise your hands if you're in agreement with me." All potential jurors raised their hands. This request for a pledge to convict Petitioner was improper.

The prosecutor's line of questioning was not directed at determining, properly, whether the venire could follow the trial court's instructions, or whether, for some reason, they "could not" or "would not be able to" convict Petitioner based on the victim's testimony alone (without physical evidence linking him to the crimes) as the State contends. Rather, the record supports Petitioner's claim that the prosecutor asked an improper commitment question when he sought to bind jurors to convict in view of anticipated evidence.

12

We also conclude that Petitioner has shown a real probability that the prosecutor's line of questioning sowed prejudice in the venire and in the jury that convicted him. Prior to the empaneling of the jury, the State was allowed to solicit an agreement from all potential jurors to reach a verdict to convict if they found the victim's testimony believable, without regard to whether the State proved guilt beyond a reasonable doubt. This inquiry ran the risk of infecting the presumption of innocence, "a basic component of a fair trial under our system of criminal justice[,]"[24] to the point that it affected Petitioner's constitutional right to trial by an impartial jury. It also ran the risk of infecting deliberations; when recalling their pledge during the State's voir dire, the jury may have felt obligated to give the reaction improperly solicited by the State. For these reasons, we reject the State's position that the trial court's jury instructions cured any error. So, we reverse the judgment of the trial court and remand this case for a new trial.

## IV. CONCLUSION

We reverse the October 6, 2022, sentencing order of the Circuit Court of Fayette County and remand this case for further proceedings consistent with this opinion.

Reversed and
remanded.

---

[24] *Estelle v. Williams*, 425 U.S. 501, 503 (1976).

13