Chief Judge EFFRON delivered the opinion of the Court.
A special court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of wrongful use of cocaine, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a (2000). The sentence adjudged by the court-martial and approved by the convening authority included a bad-conduct discharge, confinement for three months, forfeiture of $350.00 pay per month for three months, and reduction to the pay grade of E-1. The United States Navy-Marine Corps Court of Criminal Appeals affirmed. United States v. Nieto, No. NMCCA 200600977, 2007 *147 CCA LEXIS 113, 2007 WL 1701863 (N.M.Ct. Crim.App. Apr. 5,2007) (unpublished).
On Appellant’s petition, we granted review of the following issue:
WHETHER THE LOWER COURT ERRED WHEN IT HELD THAT THE MILITARY JUDGE DID NOT COMMIT PLAIN ERROR WHEN HE PERMITTED THE TRIAL COUNSEL TO ASK HYPOTHETICAL VOIR DIRE QUESTIONS THAT PRESENTED THE MEMBERS WITH SUCH DETAILED FACTS ABOUT APPELLANT’S CASE THAT THE TRIAL COUNSEL WAS IN EFFECT COMMITTING THE MEMBERS TO RETURN A VERDICT OF GUILTY PRIOR TO THE PRESENTATION OF EVIDENCE, ARGUMENT, AND INSTRUCTIONS.
In the present case, trial defense counsel did not object to the questions posed to the members by the prosecution during voir dire. For the reasons set forth below, we conclude that the military judge did not commit plain error in permitting trial counsel to ask specific questions under the circumstances of this case.
I. TRIAL PROCEEDINGS
After assembly of the court-martial, and prior to the exercise of challenges against members of the panel, the military judge provided an opportunity for voir dire examination of the panel members. See Rule for Courts-Martial (R.C.M.) 912(d). The voir dire reflected the parties’ anticipation that the prosecution would rely primarily on a positive urinalysis test, and that the defense would rely primarily on Appellant’s good military character and would seek to cast doubt on the reliability of the urinalysis procedure.
A. GROUP VOIR DIRE
At the outset, the military judge asked a series of questions during group voir dire to ensure that the members would assess urinalysis evidence in a neutral manner, with particular emphasis on ensuring that the members would not automatically equate a positive urinalysis result with guilt. The military judge then permitted each party to question the members. See R.C.M. 912(d).
Trial counsel asked a number of questions during group voir dire related to urinalysis and military character, as reflected in the following excerpts from the record:
Does any member believe that an accused should not or cannot be convicted of wrongful use of cocaine based on a urinalysis alone?
Negative response from all members.
Do any members have any negative opinions about the urinalysis testing program? Negative response from all members.
Do any members disagree with the use of a urinalysis to determine the presence of contraband substance in the body?
Negative response from all members.
If the government proves to you beyond a reasonable doubt that drugs were present in the accused[’s] urine[,] would you be capable of inferring that he knowingly used those drugs that were found there?
Affirmative response from each of the members.
Would you be able to convict a Marine if the evidence supports a conviction even if the Marine has an otherwise unblemished service record?
Affirmative response from each of the members.
Does any member believe that a Marine with a good record cannot commit a violation of the UCMJ?
Negative response from all members.
Does any member believe that evidence [of] the accusedfs] good military character by itself is sufficient to out weigh [sic] other evidence of the accused’s guilt? Negative response from the members.
Do the members understand that you all determine how much weight, if any[,] to give to the evidence of good military character that is presented by the defense in *148 determining the accused’s guilt or innocence, if that is presented?
Affirmative response from the members. Does any member believe that any technical error in the collection process, no matter how smaU[,] means that the urinalysis is per se invalid?
Okay affirmative response from each of the members.
Defense counsel asked a series of questions regarding urinalysis procedures during which all the members responded in the negative as to whether they believed the urinalysis program was infallible, responded in the affirmative to the proposition that “zero tolerance” related to mandatory processing rather than automatic discharge, and responded in the negative as to whether a positive urinalysis test “is the absolute proof that an individual knowingly used drugs[.]”
B. INDIVIDUAL VOIR DIRE
The record reflects detailed questioning of the members during individual voir dire, including a number of interchanges between trial counsel and individual members pertinent to the present appeal.
The following exchange occurred during the voir dire of Chief Warrant Officer 3 (CW03) M:
TC: You believe that any type of deviation from the SOP automatically invalidates that[,] there is no weight to be assigned to it, you didn’t follow procedures so therefore you can’t rely on it, it is unreliable evidence?
MBR (CW03 [M]): Any time you have a gap in the chain, sir[,] it makes it a weak link. So it is possible that any part of that gap could have been tampered with. I would like to hear the evidence of why there is a gap there, and based off of that evidence I could make a better determination of whether it is valid or not valid. TC: Okay. So you are talking about custody issues when you talk about the collection process?
MBR (CW03 [M]): Yes, sir.
TC: What if it was something else[?] What if there was a particular space where someone didn’t initial, where other wise [sic] they would have? Is that the sort of procedural error that you think would invalidate a urinalysis test per se?
MBR (CW03 [M]): Only if it is a standard operating procedure for that point in time, yes, sir.
TC: So if there were some body [sic] like the coordinator who was supposed to initial the bottle, and he didn’t, that would necessarily mean that you couldn’t rely on that sample that was collected because he didn’t fulfill the duties he should have? MBR (CW03 [M]): Yes, sir.
Trial counsel asked similar questions during the individual voir dire of CW02 C. In particular, the following exchange occurred:
TC: [W]ould you be able to look at and assess if there were any deviations from the SOP, and weigh them to factor whether or not this is a reliable test that we have in this case?
MBR (CW02 [C]): Yes, sir.
TC: And so it wouldn’t necessarily be per se invalid if the coordinator didn’t put his initials on the bottle[,] let’s say. If it came back to the coordinator [and] the accused brought it back to the table, but the coordinator didn’t put his initials on the bottle before it went back into the box. Would that be a violation that you couldn’t over look [sic]? No matter what[,] that is an invalid test in your mind?
MBR (CW02 [C]): In that case with the initials, no.
During the individual voir dire of Staff Sergeant (SSgt) R and Corporal (Cpl) M, trial counsel asked similar questions regarding urinalysis procedures. Both members agreed with the statement that such a deviation would not necessarily render the test invalid.
Sergeant (Sgt) Z offered a different response, as reflected in the following colloquy:
TC: [Is it] your opinion [that] any violation of the SOP regarding the collection process, no matter what it is[,] that automatically means that you can’t rely on the results of that test?
MBR (Sgt [Z]): Yes, sir.
*149 TC: Would it make any difference what sort of violation we are talking about?
MBR (Sgt [Z]): I believe that is something that seriously needs to be perfect, sir.
TC: All right. So if that included a coordinator, for instance, not initialing the bottle when he should have, that, in your mind, is a deviation that seriously jeopardizes the reliability of the results?
MBR (Sgt [ZD: Yes, sir.
Subsequently, in response to questioning by defense counsel, Sgt Z agreed that he could consider all the evidence, if so instructed, before making a decision regarding the impact of an error in the collection process.
During individual voir dire questioning, Cpl L expressed a similar belief that a coordinator’s failure to initial a urine bottle would invalidate a positive urinalysis test. After asking several unrelated questions, trial counsel returned to the issue of deviations in urinalysis procedures:
TC: If the evidence showed that the accused is the one who brought back a bottle and he put the label on the bottle himself, and verified it was his social security number, that sort of thing, and he put his initials on that label, and then he himself put the tape on the bottle and he initialed the top of the tape, and he put the sample into the box himself and took out his ID card. Would the fact that the coordinator in that process hadn’t picked up the bottle himself and initial [sic] it____be enough to ... throw out the results of that test, that couldn’t support a conviction, you couldn’t find the accused guilty if that was the error that occurred here? Is that true or not?
MBR (Cpl [L]): Not true because he signed for it.
TC: The accused?
MBR (Cpl [L]): The accused signed saying that it was his urine, sir.
In addition, Cpl L agreed that he would consider all the evidence, notwithstanding an error in the collection procedures.
C. CHALLENGES
The prosecution challenged CW03 M and Sgt Z for cause on the grounds that their responses indicated an inflexible attitude with respect to processing errors, among other grounds. After considering defense objections to the challenges, the military judge granted the prosecution’s challenge as to Sgt Z and denied it as to CW03 M. Subsequently, the prosecution exercised a peremptory challenge against CW03 M.
Only two members were challenged by the defense, both of whom were removed from the panel. The military judge granted the defense challenge to Cpl M on the grounds of her personal and professional relationship with various witnesses, and the defense exercised a peremptory challenge against Cpl L.
II. DISCUSSION
Before this Court, Appellant contends that the prosecution improperly sought to obtain from the panel members a commitment to convict Appellant based upon a hypothetical set of facts, that the commitment questions violated his right to be tried by an impartial panel, and that the military judge erred by permitting these questions. In the absence of objection by the defense at trial, we apply a plain error standard of review. United States v. Moran, 65 M.J. 178, 181 (C.A.A.F.2007). To establish plain error, an appellant bears the burden of demonstrating “(1) an error was committed; (2) the error was plain, clear, or obvious; and (3) the error resulted in material prejudice to an appellant’s substantial rights.” Id. (citing United States v. Powell, 49 M.J. 460, 463-65 (C.A.A.F.1998)); see Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2000).
Voir dire provides an opportunity to explore whether a member possesses partiality or otherwise is subject to challenge, and the military judge has broad discretion in the conduct of voir dire. See United States v. Belflower, 50 M.J. 306, 309 (C.A.A.F.1999); United States v. Jefferson, 44 M.J. 312, 318-19 (C.A.A.F.1996); R.C.M. 912(d) Discussion. As a general matter, hypothetical questions provide a permissible means of exploring potential grounds for challenge. See United States v. Reynolds, 23 M.J. 292, 293-94 (C.M.A.1987); United *150 States v. Heriot, 21 M.J. 11, 12-14 (C.M.A. 1985).
Although this Court has addressed challenges for cause based upon answers provided by prospective members to hypothetical questions during voir dire, see, e.g., Reynolds, 23 M.J. at 294, we have not heretofore addressed the scope of permissible questioning in this regard. Among the few courts that have addressed this question, a number have held that certain hypothetical questions are impermissible if they seek to obtain a commitment from jurors to agree to decide the case in a particular way upon a hypothetical set of facts. See, e.g., Hobbs v. Lockhart, 791 F.2d 125, 129-30 (8th Cir.1986); Hutcheson v. State, 92 Ark.App. 307, 213 S.W.3d 25, 32 (2005); State v. Henderson, 155 N.C.App. 719, 574 S.E.2d 700, 705-06 (2003); Thompson v. State, 2007 OK CR 38, ¶33, 169 P.3d 1198, 1209. A number of other courts have adopted a broader prohibition, precluding questions that ask jurors to commit themselves to resolving a particular aspect of the case in a specific way based upon a hypothetical set of facts. See, e.g., State v. Ball, 824 So.2d 1089, 1110 (La.2002); Burkett v. State, 179 S.W.3d 18, 31 (Tex.App.2005). Neither party has cited to us decisions from the federal civilian courts that would indicate a generally applicable standard for considering this question in the trial of criminal eases in federal district courts. Cf. Article 36(a), UCMJ, 10 U.S.C. § 836(a) (2000) (referring to “the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts” as the foundation for similar rules in the military justice system).
In short, at the time of trial, the ease law from this Court did not preclude trial counsel’s questions, generally applicable federal criminal law did not provide guidance on point, and only a handful of state cases addressed this matter. In that context, we conclude that Appellant has not carried his burden of demonstrating that the military judge committed an error that was “plain” or “obvious” in permitting the trial counsel to ask the hypothetical questions at issue in the present ease.
We emphasize that the case before us involves the scope of permissible questions on voir dire, not the ruling of a military judge on a challenge for cause. If, for example, a question prompted a panel member to make a statement demonstrating prejudgment of the case, that would present a question regarding a challenge for cause. See R.C.M. 912(f)(l)(N). In the present case, however, defense counsel not only permitted the trial counsel’s questions to proceed without objection, but also offered no challenge to any of the members who rendered the findings or sentence. On appeal, Appellant has not contended that trial defense counsel erred in not offering a challenge for cause or that the military judge erred in permitting any member to sit on the panel.
To the extent that Appellant asks us to rule that the questions at issue were impermissible, we are presented with a question that not only is a matter of first impression with this Court, but also a matter on which there is little guidance from other federal courts. Particularly in light of the fact-intensive, case-specific nature of the issue raised by Appellant, it is an issue that would benefit from a well-articulated objection at trial, as well as findings of fact and conclusions of law by the military judge. Absent the development of such a record in the case before us, we decline to conclude that the military judge committed plain error.
III. DECISION
The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.