*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

### UNITED STATES
Appellee

**v.**

### Anthony R. RAMIREZ, Major
United States Army, Appellant

**No. 23-0080**
Crim. App. No. 20210376

Argued October 24, 2023—Decided February 29, 2024

Military Judge: J. Harper Cook

For Appellant: *William E. Cassara*, Esq. (argued); *Captain Andrew R. Britt* (on brief); *Captain Justin L. Watkins*.

For Appellee: *Captain Stewart A. Miller* (argued); *Colonel Christopher B. Burgess, Lieutenant Colonel Jacqueline J. DeGaine, Lieutenant Colonel Pamela L. Jones*, and *Captain Andrew M. Hopkins* (on brief); *Major Chase Cleveland*.

Judge SPARKS delivered the opinion of the Court, in which Judge MAGGS, Judge HARDY, and Judge JOHNSON joined. Chief Judge OHLSON filed a separate opinion concurring in the judgment.

———————

Judge SPARKS delivered the opinion of the Court.

A general court-martial convicted Major Anthony R. Ramirez (Appellant), contrary to his pleas, of one specification of abusive sexual contact, two specifications of assault consummated by a battery, and one specification of conduct unbecoming an officer in violation of Articles 120, 128, and 133, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 928, 933 (2018). Appellant was acquitted of one specification of attempted sexual assault and two specifications of abusive sexual contact in violation of Articles 80 and 120, UCMJ, 10 U.S.C. §§ 880, 920 (2018). The military judge sentenced Appellant to five months of confinement and a dismissal.[1] The convening authority took no action on the findings or sentence and the military judge then entered judgment. The United States Army Court of Criminal Appeals (CCA) affirmed the findings and sentence. Appellant then petitioned this Court and review was granted on March 31, 2023.

Appellant asks this Court to decide whether the military judge improperly denied his request to ask a question about racial bias during voir dire.[2] For the reasons set forth below, we conclude that the military judge did not clearly abuse his discretion and affirm the judgment of the CCA.

## I. Background

The relevant charge stemmed from an incident that occurred when Appellant invited himself over to watch the

---

[1] The military judge sentenced Appellant to five months of confinement for Specification 2 of Charge I (abusive sexual contact), four months of confinement for Specification 1 of Charge III (assault consummated by a battery) and three months of confinement for Specification 2 of Charge III (assault consummated by a battery), with all sentences to run concurrently.

[2] The granted issue was:

> Whether the military judge abused his discretion in not allowing the defense to inquire into racial bias during voir dire?

Super Bowl with one of his junior officers and the junior officer's wife at their home, where Appellant had spent the previous night due to housing issues. Once the junior officer had fallen asleep, Appellant made multiple sexual advances towards the junior officer's wife, both verbal and physical, all of which she attempted to avoid. At one point, she recorded Appellant on her phone. The recording revealed Appellant asking the junior officer's wife to "lay down with me" and offering to meet her in the bedroom, and the junior officer's wife telling him "no," "stop," and "we cannot do this." Eventually, Appellant went to the guest bedroom. The junior officer's wife woke up her husband and told him what happened, after which he punched Appellant and told him to leave.

Appellant was charged with attempted sexual assault, abusive sexual contact, assault consummated by a battery, and conduct unbecoming an officer. Before the start of trial, Appellant requested multiple voir dire questions, including Question 16, which read, "Does anyone's cultural background influence your perception on relationships between individuals of different races?" The military judge denied the question by checking a box on a form indicating that it was "[t]oo confusing, a trick question, or unhelpful to ferreting out sincerity and ability to sit as [a panel] member."[3] The military judge told the parties to submit any requests for reconsideration on his voir dire rulings by the night before trial. Defense counsel did not submit any requests. The first day of trial, the military judge again stated that he would entertain any motions for reconsideration related to voir dire. Again, defense counsel did not make any requests for reconsideration or objections to the military judge's denial of the race-related question. Nor did he inquire into the military judge's basis for the denial. The military judge gave the members standard instructions that if they knew

---

[3] This was one of several categories in the chart the military judge employed for his voir dire rulings. He ruled that other questions fit into this category as well. The chart also contained a section for comments, but the military judge did not comment further on this particular question.

of any matter that might affect their impartiality to serve as a member, they must disclose that at the earliest opportunity at any point during the trial.

Neither Appellant's race nor that of the junior officer or the junior officer's wife were discussed on the record during trial. However, the lower court allowed Appellant to supplement the record with a declaration that he is Hispanic and that the junior officer and his wife are "of Caucasian descent/appearance."[4]

## II. Standard of Review

This Court reviews a military judge's ruling on voir dire questions for a clear abuse of discretion.[5] *United States v. Hennis,* 79 M.J. 370, 383 (C.A.A.F. 2020) (citing *United States v. Williams,* 44 M.J. 482, 485 (C.A.A.F. 1996)). Abuse of discretion occurs when the military judge: (1) bases a ruling on findings of fact that are not supported by the evidence; (2) uses incorrect legal principles; (3) applies correct legal principles in a clearly unreasonable way; or (4) does not consider important facts. *United States v. Commisso*, 76 M.J. 315, 321 (C.A.A.F. 2017). "To find abuse of discretion requires more than a mere difference of opinion—the challenged ruling must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. Jasper*, 72 M.J. 276, 279-80 (C.A.A.F. 2013) (internal

---

[4] Appellant's first motion to attach was denied but it was then granted upon reconsideration.

[5] We answer the granted issue by concluding that the military judge did not clearly abuse his discretion. However, we note that this issue was arguably forfeited through defense counsel's failure to clarify his question or request reconsideration of the military judge's ruling when offered the opportunity to do so by the military judge. Because we conclude that the military judge's ruling was not a clear abuse of discretion, Appellant cannot prevail on a forfeited issue under a plain error standard of review. *See United States v. Nieto,* 66 M.J. 146, 149 (C.A.A.F. 2008) (stating that, to establish plain error, an appellant must show: (1) there is error; (2) that is plain, clear, or obvious; and (3) the error resulted in material prejudice to an appellant's substantial rights).

quotation marks omitted) (quoting *United States v. McEl-haney*, 54 M.J. 120, 132 (C.A.A.F. 2000)). "[T]he abuse of discretion standard of review recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range." *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004) (citing *United States v. Wallace,* 964 F.2d 1214, 1217 n.3 (D.C. Cir. 1992)). Generally, military judges are, of course, granted a wide degree of deference when making discretionary decisions during trial. However, in a given case, if the military judge does not put his findings and analysis on the record, less deference will be accorded his decision. *United States v. Flesher*, 73 M.J. 303, 312 (C.A.A.F. 2014).

### III. Discussion

"As a matter of due process, an accused has a constitutional right, as well as a regulatory right, to a fair and impartial panel." *Commisso*, 76 M.J. at 321 (internal quotation marks omitted) (quoting *United States v. Wiesen*, 56 M.J. 172, 174 (C.A.A.F. 2001)). "Voir dire provides an opportunity to explore whether a member possesses partiality or otherwise is subject to challenge, and the military judge has broad discretion in the conduct of voir dire." *Nieto,* 66 M.J. at 149.

Voir dire of court martial members is governed by Rule for Courts-Martial (R.C.M.) 912(d). The rule states that the military judge may examine members or allow such examination to be conducted by the parties. According to the discussion, "the nature and scope of the examination of members is within the discretion of the military judge." R.C.M. 912(d) Discussion.

When the military judge denied the proposed voir dire question, the only record of his reasoning was his checking of a box indicating that the question was "[t]oo confusing, a trick question, or unhelpful to ferreting out sincerity and ability to sit as a member." The military judge provided no further justification for his ruling. In this situation, while we still afford deference to the military judge, we afford less deference than we would have if the military judge had

provided even brief explanations for why he believed that the question was "[t]oo confusing, a trick question, or un- helpful." However, even under a reduced level of deference, we do not conclude that the military judge clearly abused his discretion in denying defense counsel's question.

As an initial matter, Appellant claims that the military judge would not allow defense counsel to ask about racial bias at all during voir dire, and the language of the granted issue echoes this belief. However, the record indicates that the military judge only denied defense counsel's proposed question, "Does anyone's cultural background influence your perception on relationships between individuals of dif- ferent races?," because it was "[t]oo confusing, a trick ques- tion, or unhelpful to ferreting out sincerity and ability to sit as [a panel] member." The denial appeared to be di- rected towards the question itself and not the entire subject matter. We agree that the question is confusing. It could be unclear what defense counsel was aiming for with the word "anyone" (any member or any possible accused?) or the ref- erence to "cultural background" (wouldn't anyone's cul- tural background influence their opinions on anything?) or the relationships between individuals of different races (different from each other or different than one's own?).

The military judge gave defense counsel multiple oppor- tunities to further pursue his voir dire ruling by clarifying, rephrasing, or requesting reconsideration of his question. Defense counsel chose not to do so. It was his decision, not the military judge's, to curtail further pursuit of a race-re- lated voir dire question. The situation is similar to that in *United States v. Witherspoon*, a United States Army Court of Military Review case, which upheld the military judge's rejection of a voir dire question on general racial prejudice as "too broad." 12 M.J. 588, 589 (A.C.M.R. 1981). The lower court found that it was defense counsel, not the military judge, who chose not to develop the issue further by asking a more specific voir dire question. *Id.* Though the question here was more convoluted and confusing than simply broad, defense counsel similarly took no action to further

develop the issue even after the military judge offered ample opportunity to do so.

We also disagree with Appellant's proposition that, under the circumstances of this case, the military judge had a duty to ask a voir dire question about racial prejudice simply because Appellant requested it. The Supreme Court addressed a similar issue in *Rosales-Lopez v. United States,* 451 U.S. 182 (1981). It recognized that:

> *Voir dire* plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored. Without an adequate *voir dire* the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled.

*Id.* at 188. The Supreme Court allotted federal judges "ample discretion in determining how best to conduct the voir dire." *Id.* at 189.

*Rosales-Lopez* involved a defendant of Mexican descent who was involved in a plan to illegally bring Mexican immigrants into the United States. *Id.* at 184. The trial judge conducted the voir dire of potential jurors and did not ask a question requested by defense counsel related to racial prejudice. *Id.* at 185. The voir dire question was much clearer than the question at issue here: "Would you consider the race or Mexican descent of Humberto Rosales-Lopez in your evaluation of this case? How would it affect you?" *Id.* at 185 (internal quotation marks omitted).

The Supreme Court recognized a constitutional requirement to inquire into the possible racial prejudice of potential jurors in cases where racial issues are "inextricably bound up with the conduct of the trial." *Id.* at 189-90 (internal quotation marks omitted) (citation omitted). "Absent such circumstances, the Constitution leaves it to the trial court, and the judicial system within which that court operates, to determine the need for such questions." *Id.* at 190. It clarified that "[o]nly when there are more substantial indications of the likelihood of racial or ethnic prejudice affecting the jurors in a particular case does the trial

court's denial of a defendant's request to examine the jurors' ability to deal impartially with this subject amount to an unconstitutional abuse of discretion." *Id.* It also noted that other circumstances might exist that suggest an inquiry into racial bias is necessary "but the decision as to whether the total circumstances suggest a reasonable possibility that racial or ethnic prejudice will affect the jury remains primarily with the trial court, subject to case-by-case review by the appellate courts." *Id.* at 192.

The *Rosales-Lopez* court determined that, generally, the defendant should decide whether voir dire questions about racial prejudice are needed. *Id.* at 191. However, "the judge need not defer to a defendant's request where there is no rational possibility of racial prejudice." *Id.* at 191 n.7. A failure to allow such a question would result in reversible error only "where the circumstances of the case indicate that there is a reasonable possibility that racial or ethnic prejudice might have influenced the jury." *Id.* at 191. The Supreme Court ultimately concluded that the defendant had failed to demonstrate a reasonable possibility that racial or ethnic prejudice would influence the jury's evaluation of the evidence. *Id.* at 193.

Here, the CCA concluded that the military judge did not abuse his discretion. *United States v. Ramirez*, No. ARMY 20210376, 2022 CCA LEXIS 667, at *9, 2022 WL 17095059, at *4 (A. Ct. Crim. App. Nov. 16, 2022). Using the standard set forth in *Rosales-Lopez*, it determined that, since the race of the junior officer's wife had not been discussed at the point of voir dire, Appellant had failed to establish any meaningful racial difference between the two of them. *Id.* at *9-10, 2022 WL 17095059, at *4. In addition, it found no evidence in the record that racial issues were inextricably bound up with the conduct of the trial. *Id.* at *10, 2022 WL 17095059, at *4. The lower court also drew upon its decision in *Witherspoon* to conclude that the military judge did not abuse his discretion due to "the broad nature of the requested voir dire question, combined with the fact that defense counsel did not narrow his request or propose a more specific question." *Id.* at *9, 2022 WL 17095059, at *4.

We agree with the lower court that *Rosales-Lopez* should guide our decision. The circumstances here do not trigger a constitutionally required voir dire question because racial issues were not inextricably bound up with the conduct of the trial. *Rosales-Lopez*, 451 U.S. at 189-90, illustrates the kind of case that might fall into this category by comparing two other Supreme Court cases, *Ristaino v. Ross*, 424 U.S. 589 (1976), and *Ham v. South Carolina*, 409 U.S. 524 (1973). *Ham* provided an example of a case with constitutional implications. It involved a Black defendant charged with a drug offense. The appellant's defense theory was that law enforcement officers had framed him on drug charges in retaliation for his civil rights activism. 409 U.S. at 525. *Ristaino*, in contrast, concerned an armed robbery and assault and battery between a Black accused and a white victim, which was not enough to trigger the constitutional dimension. 424 U.S. at 597-98. Here, where race was not even discussed at trial, the present case falls into the *Ristaino* camp. Neither party argues otherwise.

In outlining a nonconstitutional standard, *Rosales-Lopez* determined that failure to honor a defense request for a voir dire question about racial bias amounts to reversible error only if there is "a reasonable possibility that racial or ethnic prejudice might have influenced the jury." 451 U.S. at 191. The Supreme Court further stated that a trial court need not defer to a defendant's request "where there is no rational possibility of racial prejudice," but that such requests should ordinarily be granted when "the defendant claims a meaningful ethnic difference between himself and the victim." *Id*. at 191 n.7. None of these standards are met here. Prior to trial, the race of the junior officer's wife was not discussed on the record, nor was it evident to the military judge. Therefore, at the point of voir dire, the military judge had little sense of how or to what degree race factored into the case. Appellant challenges the military judge's decision not to allow defense counsel's single proposed question on racial bias or question potential members himself. However, defense counsel, who had a far more thorough understanding of the case than the military

judge, did not engage in any discussion with the military judge about the relevance of his question or the overall issue. He did not object to the military judge denying his question. Nor did he propose any modified version of that initial question. His own treatment of the issue signaled to the military judge that it was not a significant voir dire topic. Given that defense counsel failed to discuss race during the trial and Appellant was acquitted of the most serious charges against him, it is difficult to give credence to his assertion that racial bias may have denied him a fair trial. *Rosales-Lopez* does not support a per se rule that, if defense counsel requests a question pertaining to race or ethnicity, the military judge must allow it without any further context or explanation. "There is no constitutional presumption of juror bias for or against members of any particular racial or ethnic groups . . . . there is no *per se* constitutional rule in such circumstances requiring inquiry as to racial prejudice." *Id.* at 190 (citing *Ristaino*, 424 U.S. at 596 n.8).

In addition, Appellant cites federal cases in which the trial judge modified the defense counsel's questions on a perceived bias but still queried potential jurors on the subject. However, none of these cases mandate questions on potential racial bias. Rather, they support the notion that the judge has wide discretion to tailor questions in this arena to the circumstances of the case. *See United States v. Hastings*, 739 F.2d 1269, 1272 (7th Cir. 1984) (noting the Supreme Court's recognition "that federal trial courts have broad discretion, subject to 'the essential demands of fairness,' in determining voir dire questions" (quoting *Aldridge v. United States*, 283 U.S. 308, 310 (1931))), and concluding that a trial judge does not abuse his or her discretion in conducting voir dire when there exists "sufficient questioning to produce, in light of the factual situation involved in the particular trial, some basis for a reasonably knowledgeable exercise of the right of challenge." *Id.* at 1273 (internal quotation marks omitted) (quoting *United States v. Martin*, 507 F.2d 428, 432 (7th Cir. 1974)).

*Rosales-Lopez* was a plurality opinion. The four justices joining the main opinion recognized precedent "imply[ing] that federal trial courts must make such an inquiry when requested by a defendant accused of a violent crime and where the defendant and the victim are members of different racial or ethnic groups." 451 U.S. at 192. However, the two justices who concurred in the result preferred a case-by-case review rather than "a *per se* rule requiring reversal of any criminal conviction involving a 'violent crime' between members of different racial or ethnic groups if the district court refused to *voir dire* on the issue of racial prejudice." *Id.* at 194, 195. The Supreme Court later clarified the precedential value of *Rosales-Lopez* when it stated that "in *Rosales-Lopez* . . . we held that such an inquiry as to racial or ethnic prejudice need not be made in every case, but only where the defendant was accused of a violent crime and the defendant and the victim were members of different racial or ethnic groups." *Mu'Min v. Virginia*, 500 U.S. 415, 423 (1991); *see also United States v. Borders*, 270 F.3d 1180, 1183 (8th Cir. 2001). Nonetheless, we do not alter our decision to rely upon the discretion of the military judge in this particular case because "the decision as to whether the total circumstances suggest a reasonable possibility that racial or ethnic prejudice will affect the jury remains primarily with the trial court." *Rosales-Lopez*, 451 U.S. at 192.

In denying a single proposed question, the military judge did not issue a blanket refusal to allow the defense to inquire generally about racial prejudice during voir dire. Defense counsel had multiple opportunities to restate his question or further engage the military judge and declined to do so. In addition, in keeping with the Supreme Court's decision in *Rosales-Lopez*, nothing in the circumstances of this case indicates the military judge had a duty to ask or facilitate defense counsel asking a voir dire question about racial prejudice.

## IV. Conclusion

The decision of the United States Army Court of Criminal Appeals is affirmed.

Chief Judge OHLSON, concurring in the judgment.

I write separately to make two points.

First, when a military judge is contemplating what questions to allow during voir dire, he or she must consider the following points enunciated by the Supreme Court in *Rosales-Lopez v. United States*, 451 U.S. 182 (1981).

- "[F]ederal trial courts *must* [permit voir dire inquiries into the potential racial biases of prospective jurors] *when requested by a defendant* accused of *a violent crime* and . . . *the defendant and the victim are members of different racial or ethnic groups.*" *Id.* at 192 (emphasis added).

- If the defendant is *not* accused of a violent crime but "the defendant claims a meaningful ethnic difference between himself and the victim, his *voir dire* request *should ordinarily* be satisfied." *Id.* at 191 n.7 (emphasis added). Only when "there is a reasonable possibility that racial or ethnic prejudice might have influenced the jury" does a military judge's failure to honor the defendant's request constitute reversible error. *Id.* at 191.

- There are "constitutional requirements with respect to questioning prospective jurors about racial or ethnic bias," *Id.* at 189, *if* "racial issues are '*inextricably bound up with the conduct of the trial.*'" *Id.* at 189 (quoting *Ristaino v. Ross*, 424 U.S. 589, 597 (1976)). Under this scenario, trial judges are *required* "specifically to inquire into possible racial prejudice in order to assure an impartial jury." *Id.* at 189.

Second, the constitutional standard enunciated in *Rosales-Lopez* does not apply in the instant case because racial issues were not "inextricably bound up with the conduct of the trial." However, the initial *Rosales-Lopez* category cited above *could have* applied in the instant case because (a) Appellant was accused of crimes of violence and (b) the accused and the victim are members of different

racial or ethnic groups. Specifically, on appeal to the United States Army Court of Criminal Appeals, Appellant stated that he identifies as "Hispanic" and that the victim is "of Caucasian descent/appearance." Importantly, however, Appellant never brought this ethnic difference to the attention of the military judge and never clearly indicated to the military judge that he was invoking the *Rosales-Lopez* supervisory standard.[1] Because Appellant failed to take these steps, the military judge did not clearly abuse his discretion when he denied the defense-requested inquiry.

I therefore concur in the judgment of the Court.

---

[1] The defense's proposed question—"Does anyone's cultural background influence your perception on relationships between individuals of different races?"—was, in the words of the military judge, indeed "confusing" and "unhelpful to ferreting out sincerity and ability to sit as [a panel] member."