[Cite as *State v. Moore*, 2019-Ohio-1872.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 28792 |
| | |
| Appellee | |
| | |
| v. | APPEAL FROM JUDGMENT |
| | ENTERED IN THE |
| TREY W. MOORE | COURT OF COMMON PLEAS |
| | COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR-2016-04-1270-A |

DECISION AND JOURNAL ENTRY

Dated: May 15, 2019

TEODOSIO, Presiding Judge.

{¶1} Appellant, Trey Moore, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms in part and reverses in part.

I.

{¶2} In the early morning hours of April 7, 2016, three armed individuals forced their way into an apartment. According to those who were present, the individuals demanded to see Mr. Moore, who lived in one of the units with his girlfriend and infant daughter; pistol whipped one of the other occupants; and shot the family dog before leaving. Akron police responded to two 911 calls that reported a home invasion in progress at the residence. As officers knocked and announced their presence, a shot rang out from inside. The officers retreated to the perimeter that they had established then announced their presence using a public address system. Mr. Moore exited the residence, followed by all but one of the occupants.

{¶3} Due to the circumstances that brought them to the residence, the police officers conducted a protective sweep of the building. During that search, they noted numerous items related to the cultivation of marijuana in plain sight and discovered the presence of another person inside. Officers obtained a search warrant based on the information that they gained during the protective sweep, which then led to the discovery of, among other things, a box in the trunk of a car that contained numerous glass jars of marijuana; a pill box containing seventeen yellow tablets later identified as Alprazolam, known as Xanax; a baggie containing 25.43 grams of methamphetamine; and a .32 caliber Kel-Tec handgun.

{¶4} A grand jury indicted Mr. Moore on one count of aggravated trafficking in drugs, one count of aggravated possession of drugs, two counts of trafficking in marijuana, two counts of illegal cultivation of marijuana, two counts of possession of marijuana, one count of possession of drugs, one count of felonious assault accompanied by a firearm specification, and one count of having weapons while under disability. Forfeiture specifications accompanied some of the drug-related charges. Mr. Moore waived his right to a jury trial and, after a trial to the bench, the trial court found him guilty of all of the charges except felonious assault and aggravated trafficking in drugs and specifications that accompanied those charges.

{¶5} Mr. Moore now appeals from his convictions and raises one assignment of error.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED IN CONVICTING MR. MOORE OF AGGRAVATED POSSESSION OF DRUGS (METHAMPHETAMINE), POSSESSION OF DRUGS (XANAX), AND WEAPONS UNDER DISABILITY (.32 CALIBER HANDGUN) AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶6} In his only assignment of error, Mr. Moore argues that his convictions for aggravated possession of drugs, possession of drugs, and having a weapon under disability are against the manifest weight of the evidence. Specifically, he argues that the evidence at trial demonstrated that the methamphetamine, the Xanax, and the .32 caliber handgun that were found in the trunk of a car did not belong to him, but to his neighbor. We disagree.

{¶7} This Court has stated:

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶8} Possession of drugs is prohibited by R.C. 2925.11(A), which provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."[1] Possession of Alprazolam (Xanax), a schedule IV controlled substance, constitutes possession of drugs for purposes of R.C. 2925.11(A). *See* R.C. 2925.11(C)(2); R.C. 3719.41, Schedule IV(B)(1).[2] R.C. 2925.11(C)(1) explains that "[i]f the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana, cocaine, L.S.D., heroin, hashish, and controlled substance analogs, whoever

---

[1] R.C. 2925.11 was amended effective March 22, 2019, by the Reagan Tokes Law, Am.Sub. S.B. No. 201, 2018 Ohio Laws 157. Those changes are not at issue in this appeal.

[2] R.C. 3719.41 has also been amended since the acts at issue in this case, but those amendments are not at issue in this appeal.

violates division (A) of this section is guilty of aggravated possession of drugs." Methamphetamine is a schedule II controlled substance. R.C. 3719.41, Schedule II(C)(2).

{¶9} To "possess" something, for purposes of R.C. 2925.11(A), is to have control over it. R.C. 2925.01(K). Possession cannot be inferred from "mere access * * * through ownership or occupation of the premises upon which the thing or substance is found." *Id*. Nonetheless, possession may be either actual or constructive. *State v. Hilton*, 9th Dist. Summit No. 21624, 2004-Ohio-1418, ¶ 16, citing *State v. McShan*, 77 Ohio App.3d 781, 783 (8th Dist.1991). "'Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession.'" *State v. Jackson*, 9th Dist. Summit No. 28691, 2018-Ohio-1285, ¶ 38, quoting *Hankerson* at syllabus. Presence in the vicinity of an item, standing alone, does not establish constructive possession, but other factors taken together—such as proximity to the item in plain view or knowledge of its presence—may be circumstantial evidence of possession. *State v. Owens*, 9th Dist. Summit No. 23267, 2007-Ohio-49, ¶ 23.

{¶10} Having weapons under a disability is prohibited by R.C. 2923.13(A)(2), which provides that "[u]nless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person * * * has been convicted of any felony offense of violence[.]" To "have" a weapon under disability requires either actual or constructive possession. *State v. Hardy*, 60 Ohio App.2d 325, 327 (8th Dist.1978). In this context, "[c]onstructive possession has been defined as 'knowingly [exercising] dominion and control over an object, even though that object may not be within [the defendant's] immediate physical possession.'" *State v. Blue*, 9th Dist. Lorain No. 10CA009765, 2011-Ohio-511, ¶ 17, quoting *State v. Hankerson*, 70 Ohio St.2d 87 (1982), syllabus. Ownership

does not need to be proven, and constructive possession may be established by circumstantial evidence. *Blue* at ¶ 17.

{¶11} The State demonstrated at trial that the police found a box containing numerous Ball jars of marijuana, a pill bottle of Xanax, a baggie of methamphetamine, and a .32 caliber Ken-Tec handgun in the trunk of a blue 1972 Oldsmobile located in the garage of the apartment building. Through the testimony of G.B., who lived in the first-floor apartment with Mr. Moore at the time, the State sought to establish the connection between Mr. Moore and the contraband found in the box. G.B. explained that he is the brother of Mr. Moore's girlfriend and that he and his own girlfriend, S.C., were both present on the date of this incident. At trial, G.B. recalled the events surrounding the robbery and described the sequence of events that happened immediately after. According to his testimony, Mr. Moore told everyone in his apartment to go downstairs to the garage area because the whereabouts of the intruders was unknown. G.B. testified that before he did so, Mr. Moore handed him a box and instructed him to put the box in the 1972 Oldsmobile. G.B. identified a box depicted in a photograph introduced as State's Exhibit 2 as the box that Mr. Moore instructed him to place in the car.

{¶12} State's Exhibit 2 depicts a shallow Ball jar box with no lid. The box is brown on the inside and bears a green design on the part of the outside. Officer Joseph Woodin, who executed a search warrant at the residence, testified that State's Exhibit 2 depicted what he found when he opened the trunk of a 1972 Oldsmobile using a key that he found inside the vehicle. He characterized the car as an "older vehicle that looks like it's being restored." As Officer Woodin explained, State's Exhibit 3 depicts the same box from a different perspective, and State's Exhibit 13 is a close shot of the items contained in one corner of the box: an overturned jar of

plant matter, a black handgun with the handle facing upward, a Walgreens pill bottle, and a baggie containing white powder.

{¶13} The State also introduced evidence that connected the 1972 Oldsmobile in which police discovered the contraband to Mr. Moore. Specifically, the State introduced documents establishing that Mr. Moore purchased the 1972 Oldsmobile in April 2015 and, on the same date, transferred title to C.B. as a gift. G.B. testified that it was his understanding that Mr. Moore and C.B. jointly owned the vehicle, which was inoperable. He also testified that Mr. Moore stored the vehicle in the "neighbor's garage."

{¶14} Mr. Moore, however, contends that the evidence at trial runs counter to the conclusion that he possessed the contraband. He posits that a neighbor, who remained in the neighboring apartment after Mr. Moore exited the building, placed the box in the trunk of the car before he was discovered by police. In support of this theory, Mr. Moore points to what he characterizes as confusion on the part of G.B. with respect to whether State's Exhibits 2 and 3 depict the box that Mr. Moore told him to put in the car.

{¶15} As noted above, G.B. identified State's Exhibit 2 as the box that he placed in the car. It is apparent that State's Exhibits 2, 3, and 13 depict the same box from different perspectives, as Officer Woodin testified. During cross examination, however, G.B. expressed doubt that he had seen State's Exhibit 3 before and stated, "I just don't remember the box being green. I remember it being brown." Defense counsel also showed G.B. a photograph of a brown packing box that contained numerous potted seedlings, which was marked as Defendant's Exhibit B. G.B. did not, as Mr. Moore now maintains, identify the box depicted in Defendant's Exhibit B as the box that he put in the car. Notably, G.B. testified that he did not know whether he had seen that box before or whether it was the box that Mr. Moore handed him. G.B. also did

not equivocate with respect to his testimony that Mr. Moore told him to put a box in the vehicle and that he did so. Defendant's Exhibit B, however, clearly depicts the brown box of seedlings sitting on a concrete floor near a doorway. This is consistent with the testimony of Sergeant Thomas Elton, who testified that he saw a box of what appeared to be "starter plants" in the garage "as soon as you stepped through the door * * * almost in the doorway, not quite blocking the doorway, but it was close enough."

{¶16} Having reviewed the record, we cannot conclude that the trial court lost its way when it concluded that Mr. Moore possessed the Xanax, the methamphetamine, and the .32 caliber Kel-Tec handgun. Evidence at trial demonstrated that Mr. Moore had possession and control of the 1972 Oldsmobile and that he instructed G.B. to place the box depicted in State's Exhibits 2, 3, and 13 inside that vehicle. This is, therefore, not the "exceptional case" in which the evidence weighs heavily against the conviction.

{¶17} Mr. Moore's assignment of error is overruled.

## CONCEDED ERROR

{¶18} Although not assigned as error by Mr. Moore, the State has conceded that the trial court erred by finding that Mr. Moore's conviction for possession of Xanax is a fifth-degree felony. Specifically, the State notes in its brief that because there is no record that Mr. Moore has a prior conviction for a drug-abuse offense, that conviction should be a misdemeanor.

{¶19} R.C. 2925.11(C)(2)(a) provides that a conviction for possession of a schedule IV substance is a first-degree misdemeanor unless the offender has a prior conviction for a drug abuse offense. The only evidence related to prior convictions that was produced at trial related to an offense that did not involve drugs. This Court, therefore, agrees with the State that the trial court erred by concluding that Mr. Moore's violation of R.C. 2925.11(A) is a fifth-degree felony.

III.

{¶20} Mr. Moore's assignment of error is overruled. The State has conceded error as noted above. The judgment of the Summit County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded to the trial court for proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

THOMAS A. TEODOSIO
FOR THE COURT

SCHAFER, J.
CALLAHAN, J.
CONCUR.


APPEARANCES:

J. REID YODER, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant
Prosecuting Attorney, for Appellee.