[Cite as *State v. Johnson*, 2024-Ohio-1163.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,              :

                         No. 113034

    v.                                :

FREDRICK JOHNSON,                       :

    Defendant-Appellant.             :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 28, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-677865-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Tasha L. Forchione, Assistant Prosecuting Attorney, *for appellee.*

Milton and Charlotte Kramer Law Clinic, Case Western Reserve University School of Law, Andrew S. Pollis, Supervising Attorney, and Olivia Kuenzi and Francesca Veres, Legal Interns, *for appellant.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant, Fredrick Johnson ("Johnson"), appeals from his convictions following a bench trial. Johnson raises the following assignments of error for review:

> 1. The trial court erred in convicting Mr. Johnson for possessing weapons under disability under R.C. 2923.13(A)(2) and (A)(3), both of which unconstitutionally infringe on Mr. Johnson's Second Amendment right to keep and bear arms.
>
> 2. The trial court erred in convicting Mr. Johnson under R.C. 2923.13(A)(2) and (A)(3) for living with his wife and her firearms because punishing Mr. Johnson for his wife's exercise of her Second Amendment right violates Mr. Johnson's fundamental freedom to marry.
>
> 3. The trial court erroneously found Mr. Johnson guilty of R.C. 2923.13 based on insufficient evidence that he constructively possessed his wife's firearms in his home.

{¶ 2} After careful review of the record and relevant case law, we affirm Johnson's convictions.

## I. Procedural and Factual History

{¶ 3} In January 2023, Johnson was named in a five-count indictment, charging him with drug trafficking in violation of R.C. 2925.03(A)(2), with a one-year firearm specification and forfeiture specifications (Count 1); drug possession in violation of R.C. 2925.11(A), with a one-year firearm specification and forfeiture specifications (Count 2); possession of criminal tools in violation of R.C. 2923.24(A), with a one-year firearm specification and forfeiture specifications (Count 3); having weapons while under disability in violation of R.C. 2923.13(A)(2), with a forfeiture specification (Count 4); and having weapons while under disability in violation of

R.C. 2923.13(A)(3), with a forfeiture specification (Count 5). In May 2023, the matter proceeded to a bench trial, where the following facts were adduced.

{¶ 4} On November 24, 2020, a search warrant was executed at a private residence located on Eastwood Boulevard in Garfield Heights, Ohio. The affidavit supporting the search warrant, marked defense exhibit B, indicated that the Eastwood Boulevard residence was connected to an ongoing investigation into the distribution of marijuana in Cuyahoga County. Specifically, a vehicle registered in the name of Johnson's wife, Gwenetta Smith ("Wife"),[1] was observed at the scene of an alleged drug transaction. The vehicle's registration listed the Eastwood Boulevard residence as the owner's home address.

{¶ 5} Johnson and Wife were present in the residence at the time the warrant was executed. During the search, the detectives recovered a number of items including (1) mail addressed to Johnson in the southeast bedroom, (2) a loaded Smith and Wesson SW40VE .40 caliber pistol, (3) a loaded Smith and Wesson MP Shield, .40 caliber pistol, (4) a loaded Smith and Wesson SD9, .40 caliber pistol, (5) marijuana in excess of 500 grams, (6) U.S. currency totaling $7,158 on Johnson's person and in the home, (7) a vacuum sealer, (8) a scale, and (9) packaging

---

[1] Neither Johnson nor Smith testified at trial. Nevertheless, defense counsel substantiated the nature of their relationship at the onset of trial, stating: "[A]lthough [Smith] has a different last name, they are husband and wife." (Tr. 9.) Similarly, the parties routinely referred to Smith as being Johnson's wife throughout trial, and Johnson confirmed that he was married to Smith at the time of sentencing. (Tr. 9, 13, 16, 128, 136, 184, and 188-190.)

materials. Each item was photographed in the position it was discovered by the investigators. (State's exhibit Nos. 1-35.)

{¶ 6} Officer Michael Griffis ("Officer Griffis") participated in the execution of the search warrant as a member of the S.E.A.L.E. Narcotics Task Force. Officer Griffis testified that two firearms were discovered in the "barbershop area" of the basement. (Tr. 38.) He clarified that these firearms were in plain view, stating:

> They were in the basement, just sitting basically on a — on a table, more or less, loaded and in direct proximity to where a large amount of marijuana was located.

(Tr. 81.) The third firearm was found inside a cabinet in the southeast bedroom. (State's exhibit No. 32.)[2] The firearm was accessible and sitting on top of a metal box. Photographs reflected that the metal box contained miscellaneous paperwork, including a letter addressed to Johnson. (State's exhibit No. 27.) Each firearm was later tested and found to be operable. (Tr. 51.)

{¶ 7} At the time the firearms were recovered, Johnson was prohibited from acquiring, having, carrying, or using a firearm because he was previously convicted of a felony offense of violence in Cuyahoga C.P. No. CR-09-522191-A, and a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse in Cuyahoga C.P. No. CR-03-433718-ZA. Certified

---

[2] We note that the record contains various inconsistencies regarding where the cabinet containing the third firearm was located. For instance, the prosecutor expressed during closing arguments that this firearm was discovered "in a cabinet in the kitchen, sitting on top of a box." (Tr. 151.) However, the inventory list, marked state's exhibit No. 32, expressly states that the firearm was located in the "SE bedroom," and Officer Griffis confirmed as much during his direct examination. (Tr. 46.)

records of each prior conviction were admitted into the record. (Tr. 106-108, and 143, State's exhibit Nos. 40 and 41.)

{¶ 8} At the conclusion of trial, the trial court found Johnson guilty of drug trafficking, drug possession, possession of criminal tools, and two counts of having weapons while under disability. The court further found Johnson guilty of the accompanying forfeiture specifications, but not guilty of each firearm specification.

{¶ 9} On June 29, 2023, the trial court sentenced Johnson to an aggregate nine-month prison term.

{¶ 10} Johnson now appeals from his having weapons while under disability convictions.

## II. Law and Analysis

### A. As-Applied Constitutional Challenge

{¶ 11} In the first assignment of error, Johnson argues R.C. 2923.13(A) — which identifies classes of individuals that cannot "knowingly acquire, have, carry, or use any firearm or dangerous ordnance" — is unconstitutional as applied to him. Johnson contends that the statute unconstitutionally infringes on his right to keep and bear arms under the Second Amendment to the United States Constitution. Johnson, therefore, suggests the trial court erred in convicting him of having weapons while under disability.

{¶ 12} A statute may be challenged as being facially unconstitutional, or unconstitutional as applied to the particular party. *Simpkins v. Grace Brethren Church of Delaware*, 149 Ohio St.3d 307, 2016-Ohio-8118, 75 N.E.3d 122, ¶ 21,

citing *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 26. If there is no conceivable set of circumstances in which the statute would be valid, the statutory provision is facially unconstitutional. *Id.* "An as-applied challenge, on the other hand, alleges that application of the statute in a particular factual context is unconstitutional." *Id.*, citing *Yajnik v. Akron Dept. of Health, Hous. Div.*, 101 Ohio St.3d 106, 2004-Ohio-357, 802 N.E.2d 632, ¶ 14, and *Ada v. Guam Soc. of Obstetricians & Gynecologists*, 506 U.S. 1011, 113 S.Ct. 633, 121 L.Ed.2d 564 (1992) (Scalia, J., dissenting). Concluding that a statutory provision "is unconstitutional as applied prevents future application of the statute in a similar context, but it does not render the statute wholly inoperative." *Id.*, citing *Yajnik* at ¶ 14 and *Ada* (Scalia, J., dissenting). "A party raising an as-applied constitutional challenge must prove by clear and convincing evidence that the statute is unconstitutional when applied to an existing set of facts." *Id.* at ¶ 22, citing *Groch v. GMC,* 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶ 181.

{¶ 13} When addressing constitutional challenges, courts must remain mindful that all statutes have a strong presumption of constitutionality. *Arbino* at ¶ 25; *Sorrell v. Thevenir*, 69 Ohio St.3d 415, 419, 633 N.E.2d 504 (1994), citing *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 128 N.E.2d 59 (1955), paragraph one of the syllabus; *Jones v. MetroHealth Med. Ctr.*, 2017-Ohio-7329, 89 N.E.3d 633, ¶ 63 (8th Dist.). Thus, "if at all possible, statutes must be construed in conformity with the Ohio and the United States Constitutions." *State v. Collier*, 62 Ohio St.3d 267, 269, 581 N.E.2d 552 (1991). Whether advanced as a facial or an as-

applied challenge to the constitutional validity of a statute, conclusory statements in and of themselves do not "'rebut the presumed constitutionality of the statute.'" *Rogers v. Eppinger*, 154 Ohio St.3d 189, 2018-Ohio-4058, 112 N.E.3d 902, ¶ 10, citing *State ex rel. Evans v. McGrath*, 151 Ohio St.3d 345, 2017-Ohio-8290, 88 N.E.3d 957, ¶ 6.

{¶ 14} Whether a statute is unconstitutional is a question of law subject to de novo review. *Cleveland v. State*, 157 Ohio St.3d 330, 2019-Ohio-3820, 136 N.E.3d 466, ¶ 15, citing *Crutchfield Corp. v. Testa*, 151 Ohio St.3d 278, 2016-Ohio-7760, 88 N.E.3d 900, ¶ 16; *State v. Beard*, 2021-Ohio-2512, 177 N.E.3d 591, ¶ 28 (8th Dist.). In a de novo review, we review the merits of the case independently, without any deference to the trial court. *Sosic v. Stephen Hovancsek & Assocs., Inc.*, 8th Dist. Cuyahoga No. 109993, 2021-Ohio-2592, ¶ 21.

### 1. Legal Background

{¶ 15} In this case, Johnson argues R.C. 2923.13(A)(2) and (3)'s automatic criminalization of possession of firearms by one who has been convicted of a felony offense of violence or a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse, violates the Second Amendment to the United States Constitution and is unconstitutional as applied to him. Johnson's as-applied challenge relies extensively on the new framework mandated by the United States Supreme Court in *New York State Rifle & Pistol Assn., Inc. v. Bruen,* 597 U.S. 1, 142 S.Ct. 2111, 213 L.Ed.2d 387 (2022). The *Bruen* decision follows the Supreme Court's prior landmark Second Amendment decisions

of *Dist. of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), and *McDonald v. Chicago*, 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010).

{¶ 16} The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." Historically, legal scholars debated whether the Second Amendment recognizes an individual's right to keep and bear arms beyond the goal of guaranteeing the availability of a citizen militia for the security of the state. *See United States v. Miller*, 307 U.S. 174, 176-183, 59 S.Ct. 816, 83 L.Ed. 1206 (1939). In *Heller,* the United States Supreme Court interpreted the Second Amendment to be conferring a right to keep and bear arms regardless of whether or not one is a member of an organized militia. Accordingly, the court struck down a law in the District of Columbia that banned any handgun possession, stating "the Second Amendment conferred an individual right to keep and bear arms" in the home for self-defense. *Id.* at 595, 628-30, 636.

{¶ 17} In reaching this conclusion, the court pointed out that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Id.* at 626. The court indicated that it "d[id] not undertake an exhaustive historical analysis * * * of the full scope of the Second Amendment" but that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill," among other firearm restrictions.[3] *Id.* Significantly,

---

[3] The other firearm restrictions mentioned in *Heller* are "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings" and

the court referred to these restrictions—including prohibitions that apply to felons — as "presumptively lawful regulatory measures." *Id.* at 627, fn. 26 ("We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive.").

{¶ 18} In *McDonald*, the Supreme Court subsequently held that the Second Amendment right to keep and bear arms in the home for self-defense "is fully applicable to the States" through the Fourteenth Amendment. *Id.*, 561 U.S. at 750, 130 S.Ct. 3020, 177 L.Ed. 2d 894; *see id.* at 791 ("We * * * hold that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in *Heller*."). In addition, a plurality "repeat[ed] those assurances" from *Heller* that nothing in the court's decisions should be read to "cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons and the mentally ill, laws forbidding the carrying of firearms in sensitive places * * * or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 786 (internal quotation marks omitted).

{¶ 19} More recently, the Supreme Court held in *Bruen* that "consistent with *Heller* and *McDonald* * * * the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *Bruen*, 597 U.S. at 10, 142 S.Ct. 2111, 213 L.Ed.2d 387. The court indicated that, as in *Heller*, it

---

"laws imposing conditions and qualifications on the commercial sale of arms." *Heller*, 554 U.S. at 626-627, 128 S.Ct. 2783, 171 L.Ed.2d 637.

"d[id] not undertake an exhaustive historical analysis * * * of the full scope of the Second Amendment." *Id*. at 31, quoting *Heller*, 554 U.S. at 626.

**{¶ 20}** Relevant to this appeal, the *Bruen* Court addressed the framework to be applied to a Second Amendment claim. The court noted that "[i]n the years since" it decided *Heller* and *McDonald*, "the Courts of Appeals have coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny." *Id*. at 17. Ultimately, the *Bruen* Court rejected the two-part approach and adopted the following test for assessing a Second Amendment challenge:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id*. at 24.

**{¶ 21}** With respect to the latter aspect of the *Bruen* standard, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. at 19. "To carry its burden, the government must point to 'historical precedent from before, during, and even after the founding [that] evinces a comparable tradition of regulation.'" *United States v. Rahimi*, 61 F.4th 443, 454 (5th Cir.2023), quoting *Bruen*, 597 U.S. at 27. This analysis "requires courts to assess whether modern firearms regulations are consistent with the Second

Amendment's text and historical understanding." *Bruen*, 597 U.S. at 26. The historical analysis hinges on the societal problem that the challenged regulation addresses. The *Bruen* Court explained:

> In some cases, th[e] inquiry will be fairly straightforward. For instance, when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment. Likewise, if earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional. And if some jurisdictions actually attempted to enact analogous regulations during this timeframe, but those proposals were rejected on constitutional grounds, that rejection surely would provide some probative evidence of unconstitutionality.

*Id*. at 26-27.

{¶ 22} At the same time, the *Bruen* Court recognized that "other cases implicating unprecedented societal concerns or dramatic technological changes may require a more nuanced approach." *Id*. at 27. In considering "modern regulations that were unimaginable at the founding," courts must conduct a historical inquiry that "often involve[s] reasoning by analogy." *Id*. at 28. "Like all analogical reasoning, determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar.'" *Id*. at 28-29 (internal citation omitted). The Supreme Court instructs that "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are '"central"' considerations when engaging in an analogical

inquiry." *Id.* at 29, quoting *McDonald*, 561 U.S. at 767, 130 S.Ct. 3020, 177 L.Ed.2d 894. Further,

> analogical reasoning under the Second Amendment is neither a regulatory straightjacket nor a regulatory blank check. On the one hand, courts should not "uphold every modern law that remotely resembles a historical analogue," because doing so "risk[s] endorsing outliers that our ancestors would never have accepted." *Drummond v. Robinson*, 9 F.4th 217, 226 (CA3 2021). On the other hand, analogical reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster.

*Id.* at 30.

{¶ 23} Based on the foregoing, state and federal courts alike must now apply the history-and-tradition test initially endorsed in *Heller* and later clarified by *Bruen*. Again, the first step of this test provides that "the Constitution presumptively protects" an individual's conduct "when the Second Amendment's plain text covers [that] conduct[.]" *Id.* at 17. At the second step, the government must "demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id.*

{¶ 24} In this case, Johnson asks this court to examine "who" is among "the people" protected by the Second Amendment. This is distinct from the "where" question decided by the High Court in *Bruen*. *See Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a

firearm[.]"); se*e also Range v. AG United States*, 69 F.4th 96, 100 (3d Cir.2023) (en banc). Nevertheless, Johnson relies on *Bruen* in support of his contention that the firearm regulations set forth under R.C. 2923.13(A)(2) and (3) are unconstitutional as applied to him because (1) he is one of "the people" entitled to keep and bear arms under the plain text of the Second Amendment, and (2) our Nation has no historical tradition of disarming prior felons.

## 2. Crim.R. 52

{¶ 25} In this case, Johnson did not raise an as-applied constitutional challenge to his convictions before the trial court. Thus, the issue is being raised for the first time on appeal.

{¶ 26} "'It is well established that "the question of the constitutionality of a statute must generally be raised at the first opportunity and, in a criminal prosecution, this means in the trial court."'" *State v. Jenkins*, 8th Dist. Cuyahoga No. 109323, 2021-Ohio-123, ¶ 21, quoting *State v. Alexander*, 12th Dist. Butler No. CA2019-12-204, 2020-Ohio-3838, ¶ 8, quoting *State v. Buttery*, 162 Ohio St.3d 10, 2020-Ohio-2998, 164 N.E.3d 294, ¶ 7. As such, "[t]he '[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal.'" *State v. Barnhart*, 3d Dist. Putnam No. 12-20-08, 2021-Ohio-2874, ¶ 7, quoting *State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986), syllabus.

"However, we retain the discretion to consider a waived constitutional argument under a plain-error analysis." *Id*. at ¶ 8.

{¶ 27} Crim.R. 52(B) affords appellate courts discretion to correct "[p]lain errors or defects affecting substantial rights" notwithstanding the accused's failure to meet his obligation to bring those errors to the attention of the trial court. For the plain-error doctrine to apply, the party claiming error must establish (1) that "'an error, i.e., a deviation from a legal rule'" occurred, (2) that the error was "'an "obvious" defect in the trial proceedings,'" and (3) that this obvious error affected substantial rights, i.e., the error "'must have affected the outcome of the [proceedings].'" *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 209, 436 N.E.2d 1001 (1982) ("A 'plain error' is obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse affect on the character and public confidence in judicial proceedings.").

{¶ 28} Even if a forfeited error satisfies these three prongs, however, Crim.R. 52(B) does not demand that an appellate court correct it. *Barnes* at 27. Crim.R. 52(B) states only that a reviewing court "may" notice plain forfeited errors; a court is not obliged to correct them. *Id.* The Ohio Supreme Court has acknowledged the discretionary aspect of Crim.R. 52(B) by admonishing courts to notice plain error "'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Id.*, quoting *State v. Long*, 53 Ohio St.2d 91, 372

N.E.2d 804 (1978), paragraph three of the syllabus. Similarly, appellate courts "should be hesitant to decide [forfeited errors] for the reason that justice is far better served when it has the benefit of briefing, arguing, and lower court consideration before making a final determination." *Sizemore v. Smith*, 6 Ohio St.3d 330, 332, 453 N.E.2d 632 (1983), fn. 2; accord *Mark v. Mellott Mfg. Co., Inc.*, 106 Ohio App.3d 571, 589, 666 N.E.2d 631 (4th Dist.1995) ("Litigants must not be permitted to hold their arguments in reserve for appeal, thus evading the trial court process.").

{¶ 29} For an error to be "plain" or "obvious," the error must be plain "under current law" "at the time of appellate consideration." *Johnson v. United States*, 520 U.S. 461, 467, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997); accord *Barnes*, 94 Ohio St.3d at 27, 759 N.E.2d 1240; *State v. G.C.*, 10th Dist. Franklin No. 15AP-536, 2016-Ohio-717, ¶ 14. Thus, an "error cannot be plain or obvious if the law is unsettled on the issue at the time of trial and remains so on appeal." *United States v. Nieto*, 66 M.J. 146, 151 (C.A.A.F.2008) (Stucky, J., concurring), citing *United States v. Garcia-Rodriguez*, 415 F.3d 452, 455-56 (5th Cir.2005); *United States v. Diaz*, 285 F.3d 92, 96 (1st Cir.2002); *see also State v. Harden*, 4th Dist. Pickaway No. 21CA2, 2022-Ohio-1436, ¶ 36 ("If the standard is unsettled, then an error in applying, or failing to apply, a particular standard could not, by definition, be an obvious error."); *United States v. Gonzalez*, 792 F.3d 534, 538 (5th Cir.2015) ("A lack of binding authority is often dispositive in the plain-error context.").

{¶ 30} Applying the foregoing to the circumstances presented in this case, we find Johnson cannot satisfy his burden of establishing plain error because the trial

court's failure to sua sponte dismiss or otherwise vacate Johnson's weapons convictions cannot be construed as a plain or obvious error.  Viewing the current state of the law in Ohio, both at the time Johnson's convictions were entered and at the time of this court's review, we find no binding authority to suggest R.C. 2923.13(A)(2)-(3) is unconstitutional as applied to offenders in Johnson's position.  As acknowledged by the parties in their competing appellate briefs, the interpretation and application of *Bruen* is a novel issue in this state and remains unsettled in courts across the country.  It is well beyond our present need to catalog the full field of post-*Bruen* cases and the various areas of uncertainty they portray.[4]  Regardless of how this court or our sister courts inevitably resolve the conflicting

---

[4] *See, e.g., Range v. AG United States*, 69 F.4th at 106 (3d Cir. 2023) (en banc) (in as-applied challenge, enjoining enforcement of 18 U.S.C. 922(g)(1), the federal felon-in-possession statute, against individual who was convicted of a single, nonviolent offense of making false statements on a food stamp application); *Lara v. Comm. Pa. State Police*, 91 F.4th 122, 127, 140 (3d Cir. 2024) (concluding the "words 'the people' in the Second Amendment presumptively encompass all adult Americans, including 18-20-year-olds," and striking down Pennsylvania laws that effectively ban 18-to-20-year-olds from carrying firearms outside their homes during state of emergency); *United States v. Rahimi*, 61 F.4th 443, 451, 460-461 (5th Cir. 2023) (holding unconstitutional 922(g)(8), which makes it unlawful for an individual under a court order related to domestic violence to possess a firearm; noting ongoing "debate over the extent to which the [High] Court's 'law-abiding' qualifier constricts the Second Amendment's reach"); *United States v. Daniels*, 77 F.4th 337, 340 (5th Cir. 2023) (in as-applied challenge to Section 922(g)(3), which bars "unlawful user[s]" of a controlled substance from possessing a firearm, concluding history and tradition "does not justify disarming a sober citizen based exclusively on his past drug usage"); *United States v. Jackson*, 69 F.4th 495, 502 (8th Cir. 2023) (in conflict with *Range*, finding "no need for felony-by-felony litigation regarding the constitutionality of 922(g)(1)" and upholding statute as applied); *United States v. Cunningham*, 70 F.4th 502, 506 (8th Cir. 2023) (same in case involving felony conviction for driving under the influence); *Vincent v. Garland*, 80 F.4th 1197, 1199 (10th Cir. 2023) (also in conflict with *Range*, upholding the constitutionality of the federal ban on felons' possession of firearms even "when applied to individuals convicted of nonviolent felonies").

application of *Bruen* to Second Amendment challenges that are properly raised before the trial court, it is clear that the constitutional implications of *Bruen* is unsettled and subject to an ongoing debate. In short, the contention that R.C. 2923.13(A)(2)-(3) is unconstitutional as applied to Johnson is not clear under current law. *See United States v. Stephenson*, 2d Cir. No. 21-74-cr, 2023 U.S. App. LEXIS 11672 (May 12, 2023) (stating that defendant's conviction should be upheld on plain-error review because "the contention that [Section] 922(g)(3) is unconstitutional [post-*Bruen*] is not clear under current law."); *see also United States v. Cabello*, 33 F.4th 281, 291 (5th Cir.2022); *United States v. Trejo*, 610 F.3d 308, 319 (5th Cir.2010) ("An error is not plain under current law if a defendant's theory requires the extension of precedent."). Accordingly, we are unable to conclude that the error asserted by Johnson in this appeal can be characterized as being plain or obvious.

{¶ 31} Similarly, we cannot say defense counsel was ineffective for failing to preserve a Second Amendment challenge in this matter. In order to establish a claim of ineffective assistance of counsel, Johnson must demonstrate that trial counsel's performance was deficient and that he was also prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989.

{¶ 32} The reasonableness of an attorney's conduct must be considered in light of the facts of each case. *State v. Debose*, 8th Dist. Cuyahoga No. 109531, 2022-Ohio-837, ¶ 25. We reiterate that statutes are presumed constitutional, and Johnson

has not identified a successful facial or as-applied challenge to R.C. 2923.13(A)(2) or (3) at the time of his convictions. *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 17; *State v. Cook*, 83 Ohio St.3d 404, 409, 700 N.E.2d 570 (1998). Generally, it is not ineffective assistance for a lawyer to "maneuver within the existing law, declining to present untested or rejected legal theories." *State v. McNeill*, 83 Ohio St.3d 438, 449, 700 N.E.2d 596 (1988). As previously mentioned, *Bruen* merely altered the framework for analyzing a Second Amendment challenge. The decision did not expressly resolve the question of who is among "the people" protected by the Second Amendment. Accordingly, we cannot say counsel was ineffective for failing to challenge the constitutionality of R.C. 2923.13(A)(2)-(3) in light of *Bruen*, because that precise issue was untested and not definitively supported by existing Ohio law at the time Johnson was convicted and sentenced.[5] *See State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, 16 N.E.3d 588, ¶ 219; *State v. Driffin*, 8th Dist. Cuyahoga No. 109870, 2022-Ohio-804, ¶ 9 ("Trial counsel cannot be ineffective for failing to predict and argue future changes in the law."), citing *State v. Lucic*, 8th Dist. Cuyahoga No. 91069, 2009-Ohio-5686, ¶ 5.

{¶ 33} The first assignment of error is overruled.

---

[5] The Fifth District's decision in *State v. Parker*, 5th Dist. Licking No. 23CA00009, 2023-Ohio-2127, which applied the test adopted in *Bruen*, was released approximately four days before Johnson was sentenced in this matter. However, *Parker* did not concern R.C. 2923.13(A)(2)-(3) or the disarmament of convicted felons. Accordingly, *Parker* did not alter the existing law in Ohio concerning the constitutionality of R.C. 2923.13(A)(2)-(3).

## B.  Fundamental Freedom to Marry

{¶ 34} In the second assignment of error, Johnson argues the trial court infringed upon his fundamental freedom to marry by convicting him under R.C. 2923.13(A)(2) and (3) merely because his wife exercised her Second Amendment rights.  Again, Johnson did not raise this purported issue before the trial court and has waived all but plain error.  Nevertheless, we find no merit to Johnson's position.  There is no language in R.C. 2923.13(A) to suggest that the statute limits an individual's ability to marry or otherwise prohibits a spouse from lawfully owning or possessing a firearm.  As discussed further below, R.C. 2923.13(A)(2)-(3) only prohibits the person under disability from possessing or exercising dominion or control over a weapon.

{¶ 35} The second assignment of error is overruled.

## C.  Sufficiency of the Evidence

{¶ 36} In the third assignment of error, Johnson argues his convictions for having weapons while under disability were not supported by sufficient evidence. He contends the state failed to establish the necessary element of possession.

{¶ 37} In reviewing a challenge to the sufficiency of evidence, we determine whether the evidence, if believed, would convince the average juror of the defendant's guilt beyond a reasonable doubt.  *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.  "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a

reasonable doubt." *Id.* Our review is not to determine "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).

{¶ 38} "'Proof of guilt may be made by circumstantial evidence, real evidence, and direct evidence, or any combination of the three, and all three have equal probative value.'" *State v. Rodano*, 2017-Ohio-1034, 86 N.E.3d 1032, ¶ 35 (8th Dist.), quoting *State v. Zadar*, 8th Dist. Cuyahoga No. 94698, 2011-Ohio-1060, ¶ 18. Although circumstantial evidence and direct evidence have obvious differences, those differences are irrelevant to the probative value of the evidence, and circumstantial evidence carries the same weight as direct evidence. *Id.*, citing *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 13. Further, circumstantial evidence is not only sufficient, "'"but may also be more certain, satisfying, and persuasive than direct evidence.'"" *Id.* at ¶ 36, quoting *State v. Hawthorne*, 8th Dist. Cuyahoga No. 96496, 2011-Ohio-6078, quoting *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S.Ct. 6, 5 L.Ed.2d 20 (1960).

{¶ 39} As stated, Johnson was convicted of having weapons while under disability in violation of R.C. 2923.13(A)(2) and (3). The statute provides, in relevant part:

> (A) Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
>
> * * *

(2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.

(3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

{¶ 40} Johnson does not dispute that he was under disability based on his prior convictions for an offense of violence (aggravated assault) in Cuyahoga C.P. No. CR-09-522191-A, and a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse (drug trafficking) in Cuyahoga C.P. No. CR-03-433718-ZA. (State's exhibit Nos. 40 and 41.) Rather, Johnson contends that his having weapons while under disability convictions must be reversed because he was merely present in the home where the firearms were discovered and did not knowingly acquire, have, or use any of the recovered firearms. Specifically, Johnson asserts that "the record contains no evidence that [he] constructively possessed a gun."

{¶ 41} To "have" a firearm within the meaning of R.C. 2923.13(A), a person must have actual or constructive possession of it. *State v. Davis*, 8th Dist. Cuyahoga No. 104221, 2016-Ohio-7964, ¶ 13, citing *State v. Adams*, 8th Dist. Cuyahoga No. 93513, 2010-Ohio-4478, ¶ 19. Actual possession is ownership or physical control. *State v. Jones*, 8th Dist. Cuyahoga No. 101311, 2015-Ohio-1818, ¶ 46. In contrast, constructive possession exists when an individual knowingly exercises dominion

and control over an object, even though that object may not be within his or her immediate physical possession. *State v. Wolery*, 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976); *State v. Washington*, 8th Dist. Cuyahoga Nos. 98882 and 98883, 2013-Ohio-2904, ¶ 22. "[C]ircumstantial evidence is sufficient to support the element of constructive possession." *State v. Brooks*, 8th Dist. Cuyahoga No. 94978, 2011-Ohio-1679, ¶ 17. Thus,

> if the evidence demonstrates that the defendant was in close proximity to the contraband, such that the defendant was able to exercise dominion or control over the contraband, this constitutes circumstantial evidence that the defendant was in constructive possession of the items.

*State v. Walker*, 8th Dist. Cuyahoga No. 106378, 2018-Ohio-3588, ¶ 9, quoting *Brooks* at *id*. Furthermore, a person may knowingly possess or control property belonging to another; the state need not establish ownership to prove constructive possession. *See State v. Robinson*, 8th Dist. Cuyahoga No. 90751, 2008-Ohio-5580, ¶ 84.

{¶ 42} However, "[c]onstructive possession cannot be inferred by a person's mere presence in the vicinity of contraband" or "mere access" to contraband or to the area in which contraband is found. *State v. Jansen*, 8th Dist. Cuyahoga No. 73940, 1999 Ohio App. LEXIS 2060, 8 (May 6, 1999). It must be shown that the person was "conscious of the presence of the object." *State v. Hankerson*, 70 Ohio St.2d 87, 91, 434 N.E.2d 1362 (1982); *Washington* at ¶ 22; *State v. Bray*, 8th Dist. Cuyahoga No. 92619, 2009-Ohio-6461, ¶ 21.

{¶ 43} In this case, Johnson's position on appeal relies on this court's prior decision in *State v. Hardy*, 60 Ohio App.2d 325, 330, 397 N.E.2d 773 (8th Dist.1978). In *Hardy*, the defendant, while under disability, was employed in a beverage store, where he was the victim of a robbery. In order to stop the armed robber, the defendant seized a rifle from the counter, to which all employees had access, and shot the robber. *Id.* at 325-326. This court found that prior to firing the gun, the defendant lacked the type of possession of the gun contemplated by the disability statute, stating:

> [W]here the only evidence is that Johnson, along with other employees, had physical access to the rifle, this Court is persuaded that such evidence does not support a finding that Johnson did "have" the firearm within the meaning of R. C. 2923.13 prior to November 22, 1976.

*Id.* at 328.

{¶ 44} After careful consideration, we find *Hardy* to be distinguishable from the facts presented in this case. Unlike *Hardy*, this case involved a private residence, rather than a business. The state presented credible, circumstantial evidence establishing that Johnson resided in the home with his wife at the time the firearms were discovered. The investigating detectives recovered "paperwork" addressed to Johnson inside the home, and Johnson was present at the scene when the search warrant was executed. (Tr. 42.) *See State v. Dodson*, 10th Dist. Franklin No. 17AP-541, 2019-Ohio-2084, ¶ 19 ("Such evidence demonstrated that Johnson was residing in the apartment and that he had control over the objects within the apartment."). The record also contains credible, circumstantial evidence establishing that Johnson

(1) was consciously aware of the loaded firearms' presence in the home and (2) had the ability to exercise dominion or control over the weapons. In this case, the firearms discovered in the home were easily accessible; they were not hidden or otherwise secured in a safe location. Rather, the firearms were discovered in plain view in areas of the home that Johnson had immediate access to. Two of the loaded guns were found sitting together on top of a dresser in the barbershop area of the home where Johnson resided. The third loaded gun was sitting undisturbed on a shelf in a bedroom where mail addressed to Johnson was discovered. *State v. Moore*, 9th Dist. Summit No. 28792, 2019-Ohio-1872, ¶ 9 (proximity to an item in plain view may be circumstantial evidence of possession). In addition, the guns were located in areas of the home where the drug-related materials supporting Johnson's remaining convictions were located.

{¶ 45} Viewing the foregoing evidence in a light most favorable to the prosecution, we find a rational trier of fact could have found that Johnson had constructive possession of the loaded firearms found in the private residence. Accordingly, we find sufficient evidence supports the trial court's conclusion that the essential elements of R.C. 2923.13(A)(2) and (3) were proven beyond a reasonable doubt.

{¶ 46} The third assignment of error is overruled.

{¶ 47} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

EILEEN A. GALLAGHER, P.J., and
EMANUELLA D. GROVES, J., CONCUR